



 REPUBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE ENERGIA Y MINAS
DIRECCIÓN GENERAL DE MINAS

Caracas, 02.12.2003

193° y 144°

PROVIDENCIA ADMINISTRATIVA No. 003

Por cuanto en fecha 03 de noviembre de 2003, el ciudadano **MANUEL ALFREDO FERNÁNDEZ GONZALO**, venezolano, mayor de edad, titular de la cédula de identidad No. V-6.817.138, actuando en su carácter de representante legal de las empresas V.M.C Mining Company, C.A. y Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), plenamente identificadas en autos anteriores, las cuales se atribuyen la titularidad de las concesiones de explotación de oro y diamantes de aluvión denominadas DELTA A, DELTA B, DELTA C, DELTA D y ALFA 1, ALFA 2, ALFA 3, respectivamente; solicita la revisión del contenido de la Providencia Administrativa No. 001 de fecha 07 de marzo de 2003, mediante la cual esta Dirección General de Minas, entre otros aspectos, confirma el auto de iniciación del procedimiento administrativo de fecha 31 de mayo de 2002, donde las empresas Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) y V.M.C Mining Company, C.A., quedan notificadas de que la C.V.G Electrificación del Caroní, C.A., inició los trabajos de ejecución del Proyecto Hidroeléctrico Tocoma, en un área de 29.460 hectáreas, en el lecho del Río Caroní en jurisdicción de los Municipios Piar, Caroní, Heres y Raúl Leoni del Estado Bolívar. Los argumentos expuestos por el representante legal de dichas empresas, en forma sucinta son los siguientes:

a) Que es menester destacar que para la fecha en que fue emitida la Providencia Administrativa No. 001 de fecha 07 de marzo de 2003, no fueron tomados en consideración elementos de prueba fundamentales para la tramitación del procedimiento administrativo;

b) Que a fin de evitar que sean dictadas decisiones contradictorias, en los expedientes signados con los Nos. 6102, 6103, 2084 y 2085, solicita se ordene además la acumulación de los expedientes relativos a las concesiones DELTA C, DELTA D y ALFA 3, las cuales estarían afectadas por la decisión que se pudiera tomar en el presente procedimiento administrativo;

c) Que en cuanto a la admisibilidad del escrito de descargos y, específicamente en lo referido a la supuesta falta de cualidad de la sociedad mercantil V.M.C Mining Company, C.A., para intervenir en el presente procedimiento, ratifica el



D.C.M
04-12-003

**EXHIBIT**
1

(8) O Clundre y un

documento autenticado por ante la Notaría Pública Segunda de Puerto Ordaz, en fecha 06 de agosto de 1996, anotado bajo el No. 62, Tomo 176 de los Libros de Autenticaciones llevados por ante esa Notaría, mediante el cual el ciudadano Valerio D'Amico, manifestó su voluntad de ceder los derechos que le correspondían sobre las concesiones de explotación de oro y diamantes de aluvión denominadas DELTA A, DELTA B, DELTA C y DELTA D, para lo cual consigna copia de las sentencias que reconocen la titularidad de la sociedad mercantil V.M.C Mining Company, C.A. sobre los derechos mineros antes señalados;

d) Que CVG-EDELCA viene realizando distintas actuaciones que no están sustentadas por una norma atributiva de competencias o por un acto que le confiera la potestad de realizar el acto de ocupación de las concesiones, por lo que se ha configurado una Vía de Hecho en contra de las empresas Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) y V.M.C Mining Company, C.A.;

e) Que esta Dirección General nunca tuvo conocimiento acerca de la vía de hecho, que impide el ejercicio de la actividad minera en el área de las concesiones denominadas ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C y DELTA D;

f) Que en razón de la vía de hecho, el lapso de duración de la concesión ha sido interrumpido desde el momento en que se vieron afectadas las labores en las minas por la invasión de la cual fueron objeto a partir del 25 de febrero de 2002, por lo que solicita un pronunciamiento respecto del lapso de duración efectivo de las concesiones;

g) Que no habiendo causa de extinción de las concesiones conforme a la normativa prevista en la Ley de Minas, lo procedente es aplicar el artículo 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, como principios generales en materia de concesiones;

h) Finalmente, en el petitorio del escrito solicita a este Ministerio de Energía y Minas la acumulación de los expedientes relativos a las concesiones denominadas DELTA C, DELTA D y ALFA 3; se reconozca la cualidad de la empresa V.M.C Mining Company, C.A. para intervenir en el presente procedimiento administrativo; la aplicación de los artículos 4 y 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones por causa de utilidad pública y que se le reconozca la suspensión del lapso de duración de la concesión a partir de la fecha en que comenzaron a ejecutarse las vías de hecho en el área de las concesiones.

Por cuanto, revisados como han sido los expedientes administrativos de las concesiones y todos los recaudos presentados, así como la normativa legal aplicable, este despacho observa:

-I-

Solicita el representante legal de las empresas actuantes en el presente procedimiento administrativo la revisión del acto administrativo contenido en la



Providencia Administrativa No.001 de fecha 07 de marzo de 2002, por cuanto alega en su escrito que existen nuevos elementos que no se encontraban disponibles para la fecha en que fue emitida la misma, entre los cuales destaca la existencia de una vía de hecho por parte de CVG-EDELCA en el área de las concesiones.

Pues bien, con base al principio de autotutela que informa la actividad administrativa esta Dirección General de Minas, procede, en virtud del principio de la legalidad y el reconocimiento de los principios generales del derecho, a revisar el acto administrativo contenido en la Providencia Administrativa No. 001, anteriormente identificada, esta potestad revisora se ejerce a solicitud de parte, tomando en consideración que en los expedientes administrativos referidos al presente procedimiento no consta la fecha de notificación del acto recurrido, y en tal sentido, el mismo podrá ser modificado, ratificado o reformado en su contenido.

En ese orden de ideas, y en virtud de ciertos criterios del contrato de cesión de derechos, a los que hace referencia el representante legal de la empresa V.M.C Mining Company, C.A, esta Dirección General debe en principio efectuar las siguientes consideraciones:

La hermenéutica jurídica es la ciencia que interpreta los textos legales para fijar su verdadero sentido, así como, la interrelación, convivencia y aplicación de las leyes y textos jurídicos como un sistema; ésta ciencia está sustentada por un conjunto de reglas que permiten al intérprete entender el sentido de una norma o de una ley. Así pues, la interpretación del texto legal consiste en averiguar el significado de las palabras con las cuales son designados los supuestos de hecho y sus consecuencias jurídicas, la misión fundamental de la interpretación consiste entonces en delimitar correctamente el sentido y alcance de las leyes.

En el caso presente, nos encontramos que la Ley de Minas derogada requería de una participación del traspaso de los derechos mineros, hecho que ha quedado demostrado en autos anteriores; sin embargo, es de destacar que dicha Ley no estableció criterios para el tratamiento de la figura jurídica de la cesión de derechos cuyo objeto fuera una concesión minera, caso distinto el de las enajenaciones o traspasos que comprendían parte de los supuestos de las normas contenidas en la Ley de Minas. Ante tal circunstancia, la aplicación de una o varias de las disposiciones de una ley debe realizarse de manera concatenada y coherente con el ordenamiento jurídico en su conjunto, por lo que procede la aplicación del Código Civil de Venezuela, el cual señala en su Capítulo VII, artículo 1549 que "La (...) cesión de un crédito, de un derecho o de una acción son perfectas y el derecho cedido se trasmite al cesionario, desde que haya convenio sobre el crédito o derecho cedido y el precio, aunque no se haya hecho tradición".

Es por ello que en lo que respecta a la falta de cualidad de la empresa V.M.C Mining Company, C.A, es menester destacar que en su oportunidad no se observó que la cesión de derechos ya había sido notificada a este Ministerio mediante comunicación emanada de la sociedad mercantil V.M.C Mining

*(79) setiolis p reconi*

Company, C.A. fechada 22 de agosto de 1996 y recibida (sellada) en la Oficina Fiscal de Minas, Región Guayana el día 29 de agosto del mismo año, por lo que se hace evidente el retardo u omisión en darle oportuna respuesta al interesado; en todo caso, queda demostrado que el concesionario cumplió con lo que establecía el artículo 201, Libro Tercero de la Ley de Minas vigente para la fecha en que se realizó la cesión, el cual sólo exigía la participación de la operación al Ejecutivo Nacional y en ningún caso establecía un supuesto en el cual pudiera subsumirse la situación jurídica descrita, ante tales circunstancias, es claro que en aplicación del artículo 1549 del Código Civil, en concordancia con los artículos 1º de la Ley de Sellos, 2º y 5º de la Ley Orgánica de Procedimientos Administrativos y 15 y 201 de la Ley de Minas de 1945, la empresa V.M.C Mining Company, C.A asumió todas las obligaciones y derechos que le correspondían como titular de las concesiones que le fueron cedidas mediante documento auténtico.

Pues bien, al aplicar lo dispuesto en este artículo del Código Civil, observamos que la negociación entre el concesionario original (Valerio D'Amico-Cedente) de las concesiones Delta A, Delta B, Delta C y Delta D, y el concesionario actual (V.M.C Mining Company C.A.-Cesionaria) cumple con todos los extremos legales previstos en el ordenamiento venezolano, a saber, convenio sobre el crédito o derecho cedido y el precio; por lo que se debe concluir en sana lógica, que la cesión realizada mediante el documento autenticado por ante la Notaría Pública Segunda de Puerto Ordaz, en fecha 06 de agosto de 1996, anotado bajo el No. 62, Tomo 176, está ajustada a derecho.

En este sentido, es importante señalar que el criterio anteriormente señalado tiene sustento en la jurisprudencia de la jurisdicción contencioso administrativa, la cual mediante sentencia No. 2002-1135 de fecha 16 de mayo de 2002, dictaminó que "(...) en virtud de lo expuesto por el apoderado de las empresas quejosas [entiéndase: V.M.C Mining Company C.A.] y de los elementos que cursan en autos, constituyen prueba que demuestran efectivamente que las quejosas son titulares de los derechos subjetivos legítimamente adquiridos (...)", en tal sentido, queda plenamente comprobada la cualidad de la sociedad mercantil V.M.C Mining Company C.A., para intervenir en el presente procedimiento administrativo, y así se declara.

-II-

En cuanto a la acumulación de los expedientes administrativos, se ha podido constatar que las concesiones mineras denominadas ALFA 1, ALFA 2 y ALFA 3, pertenecen a un mismo titular, Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) y, en el caso, de las concesiones denominadas DELTA A, DELTA B, DELTA C y DELTA D, las mismas le pertenecen según consta de documento autenticado por ante la Notaría Pública Segunda de Puerto Ordaz, en fecha 06 de agosto de 1996, anotado bajo el No. 62, Tomo 176 de los Libros de Autenticaciones llevados por ante esa Notaría y notificado al Ministerio de Energía y Minas en fecha 28 de agosto del mismo año, a la empresa V.M.C Mining



Company, C.A.; pues bien, a fin de resolver todas las cuestiones vinculadas al presente procedimiento administrativo en un solo acto y; por cuanto la representación de ambas empresas ha sido atribuida a un mismo representante, que las causas son conexas entre sí, a tal punto que, la decisión que recaiga en una de ellas incidirá de manera categórica en la decisión de la otra; por tanto, este despacho, acuerda a solicitud de parte, la acumulación de todas las actuaciones vinculadas al presente procedimiento administrativo de los expedientes signados con los Nos. 6102, 6103, 6104, 6105, correspondientes a las concesiones mineras denominadas DELTA A, DELTA B, DELTA C y DELTA D; así como también, de los expedientes administrativos Nos. 2084, 2085 y 2086, referidos a las concesiones denominadas ALFA 1, ALFA 2 y ALFA 3, a los fines de evitar que sean dictadas decisiones contradictorias, y así se declara.

-III-

En lo que se refiere a la aplicación del artículo 4 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, según el cual, " (...) los contratos de concesión cuyo otorgamiento, administración o gestión se encuentre regulado por leyes especiales, se regirán preferentemente por dichas leyes, siendo de aplicación supletoria en tales casos las disposiciones de este Decreto-Ley", es de precisar lo siguiente:

El Título VIII de la Ley de Minas; establece que la extinción de los derechos derivados de las concesiones mineras puede producirse de cuatro maneras: 1) por el vencimiento del término por el cual fueron otorgados; 2) por renuncia que haga el titular del derecho; 3) por nulidad *ope legis*; y 4) por caducidad.

Por lo que se refiere al régimen del contrato de concesión previsto en la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, se admiten los mecanismos de extinción propios de las relaciones convencionales y a la par se prevén mecanismos que atañen a la extinción de los actos administrativos.

En tal sentido, es de mencionar que por su carácter de ley orgánica y especial, la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones tiene aplicación preferente al momento de suplir las deficiencias de la Ley de Minas, por lo que, las situaciones jurídicas referidas a la extinción de derechos en materia concesional que no estén contempladas en la Ley de Minas, podrán suplirse por la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, de conformidad con lo previsto en el artículo 4 de la citada Ley Orgánica, y así se declara.

Visto lo anterior, la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones prevé expresamente en su artículo 53 la figura del rescate como un medio de extinción de la concesión por causa de utilidad o



interés público, lo cual debe declararse mediante acto debidamente motivado de concedente.

Es de señalar que de la documentación que reposa en los expedientes administrativos, no se evidencia un incumplimiento imputable a los concesionarios de las obligaciones derivadas de los títulos mineros; y ante tal circunstancia, procede legalmente la extinción anticipada de las concesiones por razones de conveniencia u oportunidad, vale decir, por razones no imputables a los concesionarios. En resumidas cuentas, el interés colectivo se orienta hacia el desarrollo del Proyecto Hidroeléctrico Tocoma, y a tenor de lo previsto en la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones procede la indemnización integral de los concesionarios, para lo cual se deberá elaborar conjuntamente con éstos el pliego de condiciones a que alude el artículo 53 arriba citado, en concordancia con lo establecido en el artículo 61 ejusdem.

En el presente caso, Ministerio de Energía y Minas puede poner fin a las concesiones, antes de la fecha fijada para su expiración, sin que los concesionarios hayan incurrido en una falta que diera motivo para declarar la extinción de sus derechos mineros y dado que el interés colectivo se orienta al desarrollo del Proyecto Hidroeléctrico Tocoma; en consecuencia, de conformidad con lo establecido en el artículo 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones procede la declaratoria del rescate anticipado, por lo que se deberá notificar a las empresas V.M.C Mining Company, C.A. y Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) arriba señaladas de la apertura del procedimiento de rescate anticipado para así establecer los términos del pliego de condiciones, a los efectos que una vez extinguidos los derechos mineros, reviertan los bienes a la República, y se continúe con el desarrollo del Proyecto Hidroeléctrico Tocoma, sin dilaciones ni contratiempos y sin violentar los derechos legítimamente adquiridos por terceras personas ajenas a dicho proyecto.

Sin embargo, tal condición ventajosa no exime a la Administración de ajustar su actuación a derecho, pues ésta no debe, en ningún caso, cometer arbitrariedades en el uso de tal prerrogativa, o lo que es lo mismo, su ventaja no obsta al cumplimiento de ciertas obligaciones para con las empresas concesionarias.

De allí, que según Sentencia Nº 01219 de la Sala Político-Administrativa del Tribunal Supremo de Justicia de fecha 26 de Junio de 2001, si bien la Administración se encuentra facultada para rescindir unilateralmente un contrato cuando medien razones de interés general que prevalezcan en la toma de su decisión, debe dejar a salvo los derechos de naturaleza pecuniaria que derivan de esta relación, como sería la indemnización que debe percibir la concesionaria, en atención al equilibrio financiero que caracteriza las reglas económicas básicas que debe contener todo contrato de concesión.

*(76) setenta y seis*

Finalmente, en cuanto a la interrupción del lapso de duración de las concesiones, solicitada por el representante legal de las empresas V.M.C Mining Company, C.A. y Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), es preciso señalar que, de conformidad con lo establecido en el artículo 61 de la Ley de Minas, una vez demostrada por el interesado la causa extraña no imputable que le impida el ejercicio del derecho minero, la consecuencia jurídica sería la paralización de la explotación, más ello no obsta para variar el lapso de duración de los derechos mineros que permanece en el tiempo hasta su vencimiento, por lo que se rechaza este pedimento, y así se declara.

-IV-

Por tanto, en atención a las razones de hecho y de derecho que anteceden, esta Dirección General de Minas, decide lo siguiente:

1.- Atendiendo a los principios de economía, eficacia y celeridad consagrados en la Constitución de la República Bolivariana de Venezuela en su artículo 141, se acuerda la ACUMULACIÓN de la documentación concerniente al procedimiento administrativo referido a los expedientes signados con los Nos. 6102, 6103, 6104, 6105, 2084, 2085 y 2086, en carpeta separada, a los fines de evitar que sean dictadas decisiones contradictorias de acuerdo a lo previsto en los artículos 30 y 62 de la Ley Orgánica de Procedimientos Administrativos; en consecuencia, para el mejor conocimiento del asunto, se acuerda aperturar una carpeta separada contentiva de la documentación concerniente al procedimiento administrativo que aquí se sustancia. Désele foliatura conservando el orden cronológico de las actuaciones conforme a lo previsto en el artículo 34 ejusdem.

2.- ADMITE el escrito presentado en todo a lo que se refiere a la sociedad mercantil V.M.C Mining Company, C.A., por poseer la cualidad necesaria para intervenir en el presente procedimiento administrativo, en razón de que el contrato de cesión de derechos ha surtido sus efectos legales, siendo reconocida su eficacia jurídica por los Tribunales de la República; en consecuencia, se modifica la Providencia Administrativa No.001 de fecha 07 de mayo de 2003 en cuanto a la inadmisibilidad de la pretensión aludida.

3.- Se declara PROCEDENTE la declaratoria del rescate anticipado por causas de utilidad pública de las concesiones de explotación de oro y diamantes denominadas ALFA 1, ALFA 2 ALFA 3, DELTA A, DELTA B, DELTA C y DELTA D, pertenecientes a las empresas Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) y V.M.C Mining Company, C.A, respectivamente, con fundamento en los artículos 1º de la Ley de Minas, 4, 53 y 61 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones.

4.- En cuanto a la solicitud de la declaratoria de interrupción del lapso de duración de las concesiones, se declara IMPROCEDENTE por las razones expuestas en la parte motiva de esta decisión.

Contra la presente decisión podrá intentarse Recurso de Reconsideración dentro de un lapso de quince (15) días hábiles contado a partir de la notificación respectiva, de conformidad con lo previsto en el artículo 94 de la Ley Orgánica de Procedimientos Administrativos.

FRANCISCO SALAS BLANCO
Director General de Minas

*(82) eighty-two*

[Letterhead:]
BOLIVARIAN REPUBLIC OF VENEZUELA
MINISTRY OF ENERGY AND MINES
OFFICE OF THE DIRECTOR GENERAL OF MINES

Caracas, 02.12.2003, 193rd and 144th

### ADMINISTRATIVE RESOLUTION No. 003

Whereas on November 3, 2003, Mr. **MANUEL ALFREDO FERNANDEZ GONZALO**, a Venezuelan citizen, of legal age, the bearer of identity card number V-6,817,138, acting in his capacity as legal representative of the companies V.M.C. Mining Company, C.A., and Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), both fully identified in prior proceedings, which claim to be the holders of the concessions for the exploitation of alluvial gold and diamonds known as DELTA A, DELTA B, DELTA C, DELTA D, and ALFA 1, ALFA 2, and ALFA 3, respectively, requested a review of the contents of Administrative Resolution No. 001, dated March 7, 2003, whereby this Office of the Director General of Mines, among other things, confirmed the order to initiate administrative proceedings dated May 31, 2002, in which the companies Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) and V.M.C. Mining Company, C.A., are notified that C.V.G. Electrificación del Caroní, C.A., has begun work on the Tocoma Hydroelectric Project in an area of 29,460 hectares, in the Caroní River bed, in the jurisdiction of the municipalities of Piar, Caroní, Heres, and Raúl Leoni of the State of Bolívar. Briefly stated, the arguments set forth by said companies' legal representative are the following:

a)  That it is necessary to underscore that as of the date on which Administrative Resolution No. 001 of March 7, 2003, was issued, items of evidence that are essential for the processing of the administrative proceeding were not taken into consideration;

b)  That in order to prevent contradictory decisions from being issued, he requests that, as regards the files bearing numbers 6102, 6103, 2084, and 2085, in addition, an order be given to consolidate the files for the DELTA C, DELTA D, and ALFA 3 concessions, which would be affected by any decision that may be made in the present administrative proceeding;

c)  That as regards the admissibility of the defense pleading and, specifically, as related to the alleged lack of standing of the mercantile corporation V.M.C. Mining Company, C.A., to intervene in the present proceeding, he ratifies the document authenticated at the Second Notarial Offices of Puerto Ordaz on August 6, 2006, registered under number 62, Volume 176, of the Authentication Books

*(81) eighty-one*

kept by said Notarial Offices, whereby Mr. Valerio d'Amico represented his will to assign the rights pertaining to him over the concessions for the exploitation of alluvial gold and diamonds known as DELTA A, DELTA B, DELTA C, and DELTA D, to which effect he is filing a copy of the judgments acknowledging the mercantile corporation V.M.C. Mining Company, C.A., as the holder of the aforesaid mining rights;

d)  That CVG-EDELCA has been engaging in certain acts unsupported by any provision assigning competence to it or by any action bestowing upon it the power to carry out the occupation of the concessions, and that, therefore, the companies Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), and V.M.C. Mining Company, C.A. have been the victims of illegal acts;

e)  That this Office of the Director General never learned of the illegal acts that preclude the exercise of mining activities in the area of the concessions known as ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, and DELTA D;

f)  That because of said illegal acts, the term of duration of the concession has been interrupted as of the moment when work was affected at the mines as the result of their invasion beginning of February 25, 2002, and that he is therefore requesting an opinion as to the effective term of duration of the concessions;

g)  That inasmuch as there are no grounds to extinguish the concessions under the provisions contemplated in the Mining Act, the appropriate course of action is to apply Article 53 of the Law Organizing the Promotion of Private Investment Through Concessions, as the general principles governing concessions;

h)  Finally, the pleading asks this Ministry of Energy and Mines to consolidate the files for the concessions known as DELTA C, DELTA D, and ALFA 3; to recognize the standing of the company V.M.C. Mining Company, C.A., to intervene in the present administrative proceedings; to apply Articles 4 and 53 of the Law Organizing the Promotion of Private Investment Through Concessions on the grounds of public usefulness, and that the suspension of the term of duration of the concession be recognized as of the date when illegal acts began to take place in the area of the concessions.

Whereas, after reviewing the administrative files for the concessions and all the evidence submitted, as well as applicable legal provisions, this Office notes:

- I -

The legal representative of the companies acting in the present administrative proceedings is requesting a review of the administrative act contained in Administrative Resolution No. 001 of March 7, 2002, as he alleges in his pleading that there are new

*(80) eighty*

items of evidence that were not available on the date when said Administrative Resolution was issued, among which he underscores the occurrence of illegal acts on the part of CVG-EDELCA in the area of the concessions.

Now, then, based upon the principle of autonomy governing the administrative activity of this Office of the Director General of Mines, it proceeds, by virtue of the principle of legality and the acknowledgment of the general principles of law, to review the administrative act contained in Administrative Resolution No. 001, as previously identified; this power of review is being exercised at the request of the party concerned, taking into consideration that the administrative files referring to the present proceedings do not show the date of notification of the act being challenged, and, therefore, the contents of said act may be modified, ratified or reformed.

Along these lines, and by virtue of certain aspects of the agreement for the assignment of rights referred to by the legal representative for the company V.M.C. Mining Company, C.A., this Office of the Director General must, at the outset, make the following considerations:

Legal hermeneutics is the science that interprets legal texts in order to determine their true meaning, as well as the interrelation between, coexistence, and application of laws and legal texts as a whole; this science is supported by a set of rules that enable the person seeking to interpret those laws and legal texts to understand the meaning of a provision or a law. Therefore, an interpretation of a legal text involves finding out the meaning of the words used to designate factual assumptions and their legal consequences; the fundamental mission of interpretation lies, therefore, in correctly determining the meaning and scope of laws.

In the instant case, we find that the Mining Act that was repealed required notice of the conveyance of mining rights, a fact that has been established in prior proceedings; it should be underscored, however, that said Act did not establish criteria to treat the legal concept involving the assignment of rights over a mining concession, a case different from alienations or conveyances included in a portion of the assumptions of the provisions in the Mining Act. In the face of this fact, the application of one or several of the provisions of a given statute must be done in a manner that is both related to and consistent with legal norms as a whole, and therefore it is appropriate to apply the Civil Code of Venezuela, Chapter VII, Article 1549 of which states that "The (...) assignment of a credit, of a right, or of an action are perfect, and the assigned right is conveyed to the assign, if there is an agreement as to the assigned credit or right and the price, even if delivery has not been made."

For this reason, and in connection with the lack of standing of the company V.M.C. Mining Company, C.A., it should be highlighted that it was not timely noted that the assignment of rights had already been notified to this Ministry through a communication from the mercantile corporation V.M.C. Mining Company, C.A., dated August 22, 1996,

*(79) seventy-nine*

and received (stamped) at the Mining Fiscal Office, Guayana Region, on August 29 of that same year, and therefore, the delay or omission in timely answering the interested party is evident; in any event, it has been established that the grantee complied with the provisions of Article 201, Book Three, of the Mining Act in effect at the time the assignment occurred, which only required that notice of the transaction be given to the National Executive and did not establish an assumption that might fit the legal situation that has been described; in view of these circumstances, it is clear that, pursuant to Article 1549 of the Civil Code, as related to Article 1 of the Stamp Act, Articles 2 and 5 of the Law Organizing Administrative Proceedings, and Articles 15 and 201 of the 1945 Mining Act, the company V.M.C. Mining Company, C.A., assumed all of the obligations and rights appertaining to it as the holder of the concessions that were assigned to it under an authentic document.

Now, then, when applying the provisions of this Article of the Civil Code, we note that the negotiations between the original grantee (Valerio d'Amico, assignor) of the Delta A, Delta B, Delta C, and Delta D concessions and the present grantee (V.M.C. Mining Company, C.A., assign) meet all legal requirements contemplated in Venezuelan legislation, to wit: agreement as to the assign credit or right, and the price; and therefore, sound logic leads to the conclusion that the assignment made through the document authenticated before the Second Notarial Offices of Puerto Ordaz on August 6, 1996, registered under No. 62, Volume 176, was made according to law.

In this regard, it should be pointed out that the aforesaid criterion is based upon administrative law jurisprudence; judgment No. 2002-1135 dated May 16, 2002, ruled that "(…) by virtue of the statements by counsel for the plaintiff corporations [*i.e.*, V.M.C. Mining Company, C.A.] and of the items of evidence on the record, they are evidence that effectively proves that the plaintiffs are the holders of the subjective rights legitimately acquired (…); therefore, the standing of the mercantile corporation V.M.C. Mining Company, C.A., to intervene in the present administrative proceedings has been fully ascertained, and we so declare."

- II -

As regards the consolidation of the administrative files, it has been possible to ascertain that the mining concessions known as ALFA 1, ALFA 2, and ALFA 3 belong to the same holder, Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), and in the case of the concessions known as DELTA A, DELTA B, DELTA C, and DELTA D, they belong, as reflected in the document authenticated before the Second Notarial Offices of Puerto Ordaz on August 6, 1996, registered under number 62, Volume 176 of the Authentication Books kept by those Notarial Offices, and notified to the Ministry of Energy and Mines on August 28 of that same year, to the corporation V.M.C. Mining Company, C.A.; now, then, in order to resolve all issues related to the present

*(78) seventy-eight*

administrative proceeding in one single act; and whereas the representation of both companies has been vested in the same representative, and that the causes are interrelated to such a degree that a decision handed down in one of them will have a categorical effect on the decision of the other; now, therefore, this Office, at the request of the party concerned, resolves to consolidate all proceedings related to the present administrative proceeding in the files bearing numbers **6102, 6103, 6104, 6105**, for the mining concessions known as DELTA A, DELTA B, DELTA C, and DELTA D, as well as administrative files numbers **2084, 2085, and 2086**, dealing with the concessions known as ALFA 1, ALFA 2, and ALFA 3, in order to prevent the issuance of contradictory decisions, and it is so declared.

### - III -

As regards the application of Article 4 of the Law Organizing the Promotion of Private Investment Through Concessions, according to which "(…) concession agreements the granting, administration, or operation of which is regulated by special laws, shall be governed primarily by said laws, and in said instances the provisions of the present Law-Decree shall be supplementarily applied," the following must be noted:

Title VII of the Mining Act establishes that the rights derived from mining concessions may be extinguished in four ways: 1) upon the expiration of the term for which they were granted; 2) upon relinquishment of the right by the holder; 3) on the grounds of nullity *ope legis*; and 4) upon lapsing.

As regards the concession agreement contemplated in the Law Organizing Private Investment Through Concessions, the extinguishment mechanisms typical of contractual relations are admitted and, at the same time, mechanisms are contemplated that pertain to the extinguishment of administrative acts.

It should be mentioned in this regard that because of its nature as an organic and special law, the Law Organizing the Promotion of Private Investment Through Concessions must be applied first when seeking to remedy deficiencies in the Mining Act; therefore, legal situations pertaining to the extinguishment of concession-related rights that are not contemplated in the Mining Act may be addressed under the provisions of the Law Organizing the Promotion of Private Investment Through Concessions, in accordance with Article 4 of said Law, and it is so declared.

Having seen the foregoing, Article 53 of the Law Organizing the Promotion of Private Investment Through Concessions expressly contemplates redemption as a means of

extinguishing a concession on the grounds of public usefulness or interest, which grounds must be declared in a duly supported act by the grantor of the concession.

It should be pointed out that the documentation contained in the administrative files does not reflect any breach imputable to the grantees of the concessions under the mining titles; in this situation, the early extinguishment of the concessions on the grounds of convenience or opportunity, *i.e.*, for reasons not imputable to the grantees is legally proper. Summing up, then, the collective interest is geared towards the development of the Tocoma Hydroelectric Project, and, in accordance with the provisions of the Law Organizing the Promotion of Private Investment Through Concessions, it is proper to fully indemnify the grantees, to which effect the document of conditions referred to in Article 53 cited above, as related to the provisions of Article 61 *eiusdem*, must be jointly prepared with the grantees of the concessions.

In the instant case, the Ministry of Energy and Mines may terminate the concessions before the date set for their expiration with no fault on the part of the grantees that would lead to declare their mining rights extinguished, and inasmuch as the collective interest is geared towards the development of the Tocoma Hydroelectric Project, then, and pursuant to the provisions of Article 53 of the Law Organizing the Promotion of Private Investment Through Concessions, it is proper to declare an accelerated redemption; therefore, the above mentioned companies, V.M.C. Mining Company, C.A., and Compañía Minera del Bajo Caroní, C.A. (CAROMIN), must be notified of the opening of the accelerated redemption process so as to establish the terms of the document containing the conditions in order that, once the mining rights have been extinguished, the property should revert to the republic and the development of the Tocoma Hydroelectric Project may continue without delay or inconvenience, and without doing violence to the rights legitimately acquired by third parties unrelated to said project.

However, such advantageous position does not relieve the Administration of the duty to act according to law, as it must not, in any instance, act arbitrarily in the use of such prerogative; this is tantamount to saying that its advantage does not preclude compliance with certain obligations to the grantee companies.

Therefore, according to Opinion No. 01219 of the Political and Administrative Division of the Supreme Court of Justice, dated June 26, 2001, even though the Administration is empowered to unilaterally rescind an agreement when reasons of general interest prevail in its decision-making process, it must hold harmless any rights of a monetary nature arising out of such relationship, such as the indemnity the grantee of the concession must receive for the sake of the financial balance inherent to the basic economic rules every concession agreement must include.

*(76) seventy-six*

Finally, as regards the interruption of the term of duration of the concessions requested by the legal representative of the companies V.M.C. Mining Company, C.A., and Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), it is necessary to point out that, according to the provisions of Article 61 of the Mining Act, once the party concerned has established the existence of a reason beyond his control and not imputable to him that prevents him from exercising his mining rights, the legal consequence would be the halting of the exploitation; this, however, does not justify a variation in the duration of the mining rights, which continue to run until their expiration; therefore, this request is denied, and it is so declared.

## - IV -

Therefore, on the basis of the factual and legal reasons set forth above, this Office of the Director General of Mines decides as follows:

1.     In furtherance of the principles of economy, efficacy, and celerity enshrined in Article 141 of the constitution of the Bolivarian Republic of Venezuela, it is decided to **CONSOLIDATE** the documentation pertaining to the administrative proceeding dealing with the files bearing numbers 6102, 6103, 6104, 6105, 2084, 2085, and 2086, in a separate binder, in order to prevent contradictory decisions from being issued, pursuant to the provisions of Articles 30 and 52 of the Law Organizing Administrative Proceedings; consequently, and in order that the matter may be better heard, it is resolved to open a separate binder containing the documentation pertaining to the administrative proceeding being discussed here. Let its pages be numbered maintaining the chronological order of the proceedings, as contemplated in Article 34 *eiusdem*.

2.     It **ADMITS** the pleading that was filed to the extent that it refers to the mercantile corporation V.M.C. Mining Company, C.A., inasmuch as it has the standing necessary to intervene in the present administrative proceeding, as the agreement of assignment of rights has had legal effect, its legal efficacy having been acknowledged by the courts of the republic; consequently, Administrative Resolution No. 001 of May 7, 2003, is modified as to the inadmissibility of the claim in question.

3.     The accelerated redemption on the grounds of public usefulness of the concessions for the exploitation of gold and diamonds known as ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, and DELTA D, belonging to the companies Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), and V.M.C. Mining Company, C.A., respectively, is declared to be **PROPER**, based on Article 1 of the Mining Act, and Articles 4, 5, and 61 of the Law Organizing the Promotion of Private Investment Through Concessions.

4.     As regards the request to declare interrupted the term of duration of the concessions, it is **DENIED** on the grounds set forth elsewhere in this decision.

*(75) seventy-five*

A Motion to Reconsider the present decision may be filed within the fifteen (15) business days following the respective notice, in accordance with the provisions of Article 94 of the Law Organizing Administrative Proceedings.

*[Illegible signature]*

**FRANCISCO SALAS BLANCO**
**Director General of Mines**

[Seal:]   BOLIVARIAN REPUBLIC OF VENEZUELA
Office of the Under-Secretary of Mines
(Coat of Arms)
Office of the Director General of Mines
MINISTRY OF ENERGY AND MINES

[Every page of the original Spanish document bears a seal reading:]

BOLIVARIAN REPUBLIC OF VENEZUELA
Under-Secretary of Mines
(Coat of Arms)
Office of the Director of Mining Concessions
MINISTRY OF ENERGY AND MINES

[In addition, the first page of the original Spanish document bears the following handwritten notation:]

D.C.M.
04-12-003
[Illegible initials]

# LOPEZ AND DURAN
**Interpreting and Translating**
420 South Dixie Highway, Suite 2L
Coral Gables, Florida  33146
Tel. (305)461-4699  * Fax(305)461-4799

CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
                 ) SS.
COUNTY OF DADE   )

Before me, a notary public in and for the State of Florida at large, appears

Nelson Duran, Ph.D., who is personally known to me, a certified court interpreter,

qualified by the Administrative Office of the United States Courts, for and on

behalf of Lopez and Duran Interpreting and Translating, who, after being duly sworn,

deposes and says that he is fully versed in the Spanish and the English languages,

and that the aforegoing is a true and correct translation of the attached document

consisting of ___eight___ pages, and that this is the last of the attached.



Nelson Duran, Ph.D.

Sworn to and subscribed this _16th_ day of _April_ , 200_7_.

MARLEN ABASCAL
Notary Public,
State of Florida at Large

My commission expires:

MARLEN ABASCAL
MY COMMISSION # DD 342829
EXPIRES: August 2, 2008
Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations.
Lopez and Duran Interpreting and Translating and its employees shall not be
liable for any damages due to negligence or error in typing or translation.

(98) noventa y ocho

En el día de hoy miércoles 17 de diciembre de 2003, siendo las 10:30 a.m., se reunieron en la sede de la Dirección General de Minas del Ministerio de Energía y Minas, ubicada en el Edificio Petróleos de Venezuela, Torre Oeste, Piso 03, los ciudadanos Ingª Francisco Salas, Director General de Minas (E); Martha Acosta García, Directora de Concesiones Mineras (E); Adrián Zerpa León, Jefe de Tramitaciones Mineras (E); Rosa Toro, Abogado adscrito a la Consultoría Jurídica; Manuel Fernández Gonzalo, Representante Legal de las empresas V.M.C Mining Comany, C.A. y Compañía Minera del Bajo Caroní, C.A.; a fin de celebrar un acuerdo contentivo del **PLIEGO DE CONDICIONES** a que hace referencia el artículo 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones. En tal sentido, se acordó lo siguiente:

**PRIMERO:** Consta de Oficio Nº DGM-DCM-DTM-516, de fecha 02 de diciembre de 2003, emanado de la Dirección General de Minas, que dicho Ministerio acordó el rescate anticipado por causas de utilidad pública de las concesiones de explotación de oro y diamantes denominadas **ALFA 1, ALFA 2, ALFA 3,** pertenecientes a la **COMPAÑÍA MINERA BAJO CARONI, CAROMIN, C.A., DELTA A, DELTA B, DELTA C, DELTA D,** pertenecientes a la sociedad mercantil **V.M.C. MINING COMPANY, C.A.** Asimismo, consta en dicho acto administrativo que en aplicación de lo dispuesto en el artículo 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, se procederá a la determinación de la indemnización integral de las concesionarias, para lo cual se deberá elaborar un pliego de condiciones.

**EXHIBIT**
**2**

(97) noventa y siete



**SEGUNDO:** Las partes fijan en este documento las condiciones que regirán el proceso para la determinación de la referida indemnización integral de conformidad con la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones.

**TERCERO:** La fijación de la indemnización se obtendrá de la valoración que efectúe el perito avaluador que de mutuo acuerdo designen las partes, el cual deberá contar con una reconocida trayectoria profesional, pudiendo ser una persona natural o una firma avaluadora. El informe del perito avaluador que sea designado deberá ser presentado por escrito a cada una de las partes, dentro de un lapso de treinta (30) días hábiles, contado a partir de la fecha de su designación.

**CUARTO:** El monto de la indemnización que fije el perito avaluador tendrá carácter definitivo. Dicho monto será pagado por separado a cada una de las concesionarias, según lo que se determine para cada una de las concesiones ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, y DELTA D.

**QUINTO:** Una vez determinado el monto de la indemnización, el Ministerio de Energía y Minas iniciará los trámites para el pago del mismo ante el órgano competente. Dicho pago podrá efectuarse en moneda de curso legal o en títulos emitidos por la República Bolivariana de Venezuela, denominados en cualquier tipo de moneda.



**SEXTO:** Para el mejor desarrollo de las actividades necesarias para la elaboración del informe que presentará el perito avaluador que sea designado, el Ministerio autorizará al mismo para visitar el área de las concesiones antes referidas y ejecutar las diligencias que crea necesarias, de las cuales informará a las partes. Igualmente, el referido perito tendrá acceso a toda la información técnica y contable de las concesionarias y a los expedientes administrativos llevados por el Ministerio de Energía y Minas.

Se hacen dos (2) ejemplares de un mismo tenor y a un sólo efecto. En Caracas a los 17 días del mes de diciembre de 2003.

POR EL MEM

FRANCISCO SALAS
Director General de Minas (E)

MARTHA ACOSTA GARCIA
Directora de Concesiones
Mineras (E)

ADRIAN ZERPA LEON
Jefe de Tramitaciones Mineras
(E)

ROSA TORO
Abogado de la Consultoria
Jurídica

POR LAS CONCESIONARIAS

MANUEL FERNANDEZ
Representante Legal de VMC
Mining Company y CAROMIN

*(98) ninety-eight*

On this day, Wednesday, December 17, 2003, at 13:00 a.m., there gathered together at the offices of the Director General of Mines of the Ministry of Energy and Mines, located at Petróleos de Venezuela Building, West Tower, third floor, Eng. Francisco Salas, Director General of Mines (E): Martha Acosta García, Director of Mining Concessions (E); Adrián Zerpa León, Head of Mining Processing (E); Rosa Toro, an attorney assigned to the Legal Department; Manuel Fernández Gonzalo, Legal Representative of the companies V.M.C. Mining Company, C.A., and Compañía Minera del Bajo Caroní, C.A.; in order to execute an agreement containing the **GENERAL CONDITIONS** referred to by Article 53 of the Law Organizing the Promotion of Private Investment Through Concessions. To that effect, the following was agreed upon:

**FIRST:** As reflected in Official Communication **No. DGM-DCM-DTM-516**, dated December 2, 2003, issued by the Office of the Director General of Mines, said Ministry decided the accelerated redemption on the grounds of public usefulness of the concessions for the exploitation of gold and diamonds known as **ALFA 1, ALFA 2, ALFA 3**, belonging to **COMPAÑIA MINERA BAJO CARONI, CAROMIN, C.A., DELTA A, DELTA B, DELTA C, DELTA D**, belonging to the mercantile corporation **V.M.C. MINING COMPANY, C.A.** It is likewise reflected in said administrative proceeding that, pursuant to the provisions of Article 53 of the Law Organizing the Promotion of Private Investment Through Concessions, the full indemnity of the grantees is to be determined, to which effect a document containing general conditions shall be prepared.

*(97) ninety-seven*

**SECOND:** The parties are setting in this document the conditions that shall govern the process for determining said full indemnity in accordance with the Law Organizing the Promotion of Private Investment Through Concessions.

**THIRD:** The setting of the indemnity will be obtained from the evaluation made by the expert evaluator appointed by the mutual agreement of the parties; the evaluator must have an acknowledged professional track record, and may be either a physical person or an evaluation firm. The report of expert evaluator who is eventually designated shall be filed in writing with each of the parties within a period of thirty (30) business days, reckoned as of the date of the evaluator's appointment.

**FOURTH:** The amount of the indemnity set by the expert evaluator shall be final in nature. Said amount shall be paid separately to each of the grantees as may be determined for each of the concessions **ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, and DELTA D.**

**FIFTH:** Once the amount of the indemnity has been determined, the Ministry of Energy and Mines will initiate the process with the competent body for the payment thereof. Said payment may be made in legal tender or in securities issued by the Bolivarian Republic of Venezuela, denominated in any currency whatever.

*(96) ninety-six*

**SIXTH:**    To ensure the better unfolding of the activities necessary for the preparation of the report to be filed by the expert evaluator who is eventually designated, the Ministry shall authorize said expert to visit the area of the concessions previously referred to, and to carry out such activities as the expert may deem necessary, reporting to the parties thereon. Likewise, said expert shall have access to all of the grantees' technical and accounting information, and to the administrative files maintained by the Ministry of Energy and Mines.

Two (2) copies of identical tenor and effect are prepared.  In Caracas, this 17th day of the month of December, 2003.

**FOR THE MEM**

[*Illegible signature*]

**FRANCISCO SALAS**
Director General of Mines (E)

[*signed:*] *Martha Acosta G*

**MARTHA ACOSTA GARCIA**
Director of Mining Concessions (E)

[*Illegible signature*]

**ADRIAN ZERPA LEON**
Head of Mining Processing (E)

[*Illegible signature*]

**ROSA TORO**
Attorney, Legal Department

**FOR THE GRANTEES**

[*Illegible signature*]

**MANUEL FERNANDEZ**
Legal Representative of VMC
Mining Company and CAROMIN

# LOPEZ AND DURAN

**Interpreting and Translating**
420 South Dixie Highway, Suite 2L
Coral Gables, Florida 33146
Tel. (305)461-4699 * Fax(305)461-4799

CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
                 ) SS.
COUNTY OF DADE   )

Before me, a notary public in and for the State of Florida at large, appears Nelson Duran, Ph.D., who is personally known to me, a certified court interpreter, qualified by the Administrative Office of the United States Courts, for and on behalf of Lopez and Duran Interpreting and Translating, who, after being duly sworn, deposes and says that he is fully versed in the Spanish and the English languages, and that the aforegoing is a true and correct translation of the attached document consisting of _____ three _____ pages, and that this is the last of the attached.



Nelson Duran, Ph.D.

Sworn to and subscribed this __16th__ day of __April__, 200 _7_.

MARLEN ABASCAL
Notary Public,
State of Florida at Large

My commission expires:

> MARLEN ABASCAL
> MY COMMISSION # DD 342829
> EXPIRES: August 2, 2008
> Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations. Lopez and Duran Interpreting and Translating and its employees shall not be liable for any damages due to negligence or error in typing or translation.

REPUBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE ENERGIA Y MINAS
DIRECCION GENERAL DE MINAS

## ADDENDUM

Por cuanto  en fecha 17 de diciembre de 2003  este Ministerio de Energia y Minas
(MEM)  por organo de la Direccion General de Minas ha suscrito el Pliego de
Condiciones  con el representante legal de las sociedades mercantiles Compañia
Minera del Bajo Caroni (CAROMIN), C.A.  y V.M.C Mining Company  C.A. (LAS
EMPRESAS)  a los fines de dar continuidad al procedimiento administrativo de
rescate anticipado  por cuanto  el Pliego de Condiciones anteriormente señalado  no
estableció las consecuencias de los eventuales incumplimientos a los acuerdos en el
contenidos por ambas partes  por lo tanto  este Ministerio  actuando en nombre y
representación de la Republica Bolivariana de Venezuela  acuerda lo siguiente:

PRIMERO: En caso de existir algun incumplimiento  por parte de las empresas
arriba señaladas  tales como  a) La iniciación  de nuevos juicios en contra de la
Republica Bolivariana de Venezuela,  el MEM  y/o CVG-EDELCA relacionado al
rescate anticipado contenido en la Providencia Administrativa No. 009  de fecha 22
de diciembre de 2003  b) No proporcionar al perito evaluador que sea designado los
documentos y data de las concesiones mineras A ma1   Alfa 2, Alfa 3, Delta A  Delta
B  Delta C y Delta D  c) No cumplir con las obligaciones asumidas en el Pliego de
Condiciones  se elige como domicilio especial y excluyente  de cualquier otro  a la
ciudad de Caracas  a la jurisdicción de cuyos tribunales se someten ambas partes;
asi como  la legislación y la ley aplicable será la  de la Republica Bolivariana de
Venezuela

SEGUNDO: En caso de incumplimiento por parte del MEM  se elige como domicilio
especial y excluyente  de cualquier otro  a la ciudad de Nueva York, estado de
Nueva York, Estados Unidos de America  a la jurisdicción de los tribunales del
estado de Nueva York y se regira el proceso por la Ley o estatutos que gobiernen a
dicho (s) tribunal (es). Se entiende por "incumplimiento" del MEM, lo siguiente: a)
Contravenir el contenido de la Clausula Quinta del Pliego de Condiciones  b) No
proporcionar al perito  que sea designado  permiso de acceso al area de las
concesiones mineras. La ley aplicable en este caso  será la de Estados Unidos de
America. No obstante lo anterior  las parte acuerdan  que la empresas tendran el
derecho de intentar la accion de cobro de dinero en cualquier otro tribunal o corte
de los Estados Unidos de América, en cuyo caso la aplicación de la Ley será la de
el estado donde este ubicado dicho tribunal  Asimismo  las partes acuerdan que las
empresas tendrán el derecho de solicitar y ejecutar  medidas precautelativas,
precautelares, embargo preventivo  secuestros previos  al fallo  ejecución de
embargo  ejecución del propio fallo en cualquier otro tribunal diferente a los de la
ciudad de Nueva York. Por otra parte  el MEM acuerda que cualquier medida
preventiva de embargo, secuestro  o de naturaleza similar decretada por cualquier
tribunal podra ser ejecutada por cualquier otro tribunal de jurisdicción competente
Por otra parte  el MEM reconoce que en la celebracion del Pliego  de Condiciones

EXHIBIT
3

así como en este orden tum actúa en nombre y representación de la República Bolivariana de Venezuela por o que las empresas tendrán derecho de ejecutar las medidas aquí mencionadas contra cualquier activos, ingresos y propiedades) pertenecientes a la República Bolivariana de Venezuela que se encuentren ubicados en los Estados Unidos de América. Asimismo las partes acuerdan que en caso de acciones legales en los tribunales de Estados Unidos de América, quedan fuera de la jurisdicción de dichos tribunales, los activos de la República Bolivariana de Venezuela ubicados dentro de territorio venezolano.

TERCERO: Las partes igualmente acordaron, que bajo ninguna circunstancia los tribunales de Nueva York y/o de los Estados Unidos de América podrán entrar o conocer como instancia de juicio aspectos inherentes a la validez del proceso administrativo de rescate anticipado, sólo considerarán aspectos referidos a la indemnización y/o al pago oportuno, o a lo sumo a las consecuencias legales y/o económicas del proceso del rescate anticipado. En tal sentido, el MEM, actuando en nombre y representación de la República Bolivariana de Venezuela, se somete a lo contenido en la Ley sobre la Inmunidad Soberana Extranjera de Estados Unidos de 1970, y bajo ningún respecto utilizará los tribunales venezolanos en caso de incumplimiento de pago en cuanto a este proceso. Es por ello que, una vez culminando el juicio en contra del MEM en alguno de los tribunales arriba señalados, la sentencia se podrá hacer cumplir en cualquier otro tribunal o Corte de jurisdicción competente, por lo tanto, el MEM ha acordado renunciar y no demandar excepciones tales como la inmunidad de la jurisdicción, sino no conveniente contactos mínimos, señalar otro proceso legal o judicial durante el procedimiento por ante tribunales ubicados en la República Bolivariana de Venezuela. Esta renuncia también incluye inmunidad a medidas accesorias, excepciones o defensas de naturaleza similar a medidas precautelativas, precautelares, embargo preventivo, secuestros previos al fallo, ejecución de embargo, ejecución del propio fallo. Asimismo, el MEM se compromete a no iniciar ningún proceso legal en tribunales venezolanos, una vez que las empresas inicien demandas o procesos judiciales de cobro en los tribunales de la ciudad de Nueva York y/o los Estados Unidos de América.

CUARTO: Este addendum entrará en vigencia, si a los 24 meses siguientes a la entrega del informe del perito evaluador, el MEM no hubiera cancelado la indemnización integral que llegue a fijar el perito designado por ambas partes. El MEM acuerda en esta cláusula cancelar intereses moratorios a las empresas desde el momento en que el perito escogido por las partes entregue su informe respectivo, siempre que las empresas sean obligadas a iniciar acciones legales de cobro. En caso que el MEM u otro organismo de la Administración Pública cancele el monto indemnizatorio a las empresas, las mismas no podrán reclamar pago de intereses. En caso de acciones legales de cobro por parte de las empresas el MEM acuerda en cancelar a las mismas la tasa del Ocho coma Cinco (8,5%) por ciento anual a partir del momento de la entrega del informe del perito avaluador, así como también los costos de juicios y los honorarios de abogado a que haya lugar.

QUINTA: Las partes acuerdan que los honorarios del perito avaluador que sea

designado conforme al juego de condiciones seran cancelados por el MEM

SEXTA. Domicilio de las partes: Compañia Minera del Bajo Caroni (CAROMIN, C.A.) y M.M.C Mining Company C.A., Calle Cuenca, Manzana 7, Camoc 15 de Ferrominera, Quinta Anau, Puerto Ordaz, Estado Bolivar, exclusivamente en la persona del Representante Legal de las empresas: Manuel Alfredo Fernández Gonzalo, y en caso de ausencia de este, en la persona del apoderado judicial de las mismas, abogado Luis Andres Guerrero Rosales. MEM: Consulado General de la Republica Bolivariana de Venezuela en Estados Unidos de America Septima Avenida con Calle 5. Este Nueva York, Nueva York 10022. En este caso, el MEM ha designado al Consul General de la Republica Bolivariana de Venezuela en la ciudad de Nueva York, y en caso de ausencia de este, a cualquier otro oficial de dicho consulado para darse por citado o notificado de cualquier accion o juicio intentado en contra de la Republica Bolivariana de Venezuela, en cualquier corte estatal o federal en la ciudad de Nueva York y/o de los Estados Unidos de America

Notifiquese al representante legal de las empresas anteriormente mencionadas quien debera firmar al pie en señal de conformidad

Agreguese a la carpeta separada del expediente administrativo identificado con el número 2024

En Caracas, a los diecinueve (19) dias del mes de diciembre del año dos mil tres (2003).

Ing. RAFAEL RAMIREZ

Acepto los terminos y condiciones arriba señalados
Fecha

BOLIVARIAN REPUBLIC OF VENEZUELA
**MINISTRY OF ENERGY AND MINES**
[Illegible]

## ADDENDUM

Whereas on December 17, 2003, this Ministry of Energy and Mines (MEM), acting through the Office of the Director General of Mines, signed the General Terms and Conditions with the legal representative of the mercantile corporations Compañía Minera del Bajo Caroní (CAROMIN), C.A., and V.M.C. Mining Company, C.A. (THE COMPANIES), in order to give continuity to the administrative procedure of accelerated redemption; whereas the aforesaid General Terms and Conditions did not establish the consequences of any possible breach by either party of the agreements therein contained; now, therefore, this Ministry, acting in behalf and representation of the Bolivarian Republic of Venezuela, resolves the following:

**FIRST:** In case that there should exist any breach on the part of the companies indicated above, such as: a) The commencement of new lawsuits against the Bolivarian Republic of Venezuela, the MEM, and/or CVG-EDEI.CA, related to the accelerated redemption contained in Administrative Order No. 003 of December 2, 2003; b) The failure to provide the expert evaluator who may be designated with documents and data related to the mining concessions Alfa 1, Alfa 2, Alfa 3, Delta A, Delta B, Delta C, and Delta D; c) Not complying with the obligations assumed under the General Terms and Conditions. [*sic.*] The city of Caracas is elected as special domicile, to the exclusion of any other, and both parties submit to the jurisdiction of the courts thereof; likewise, the applicable legislation and law shall be those of the Bolivarian Republic of Venezuela.

**SECOND:** In case of a breach on the part of the MEM, the city of New York, State of New York, United States of America, is elected as special domicile, to the exclusion of any other, under the jurisdiction of the courts of the State of New York, and the process shall be governed by the law or statute governing said court(s). A breach on the part of the MEM is understood to mean the following: a) Contravening the contents of Clause Five of the General Terms and Conditions; b) Not granting permission to the expert who may be designated to have access to the area of the mining concessions. The applicable law in this case shall be that of the United States of America. The foregoing notwithstanding, the companies shall be entitled to bring an action for the collection of monies in any other tribunal or court of the United States of America, in which case the applicable law shall be the law of the state where said court is located. Likewise, the parties agree that the companies shall have the right to ask for and execute preventive measures, cautionary measures, preventive garnishments, attachments prior to judgment, executions of garnishments, execution of the judgment itself in any other court different from those of the city of New York. On the other hand, the MEM agrees that any preventive measure, whether a garnishment, an attachment, or any other of a similar nature, ordered by any

court, may be executed by any other court of competent jurisdiction. On the other hand, the MEM acknowledges that in executing the General Terms and Conditions and this Addendum it is acting in behalf and representation of the Bolivarian Republic of Venezuela, and therefore the companies shall be entitled to execute the measures mentioned herein against any assets, income, or property belonging to the Bolivarian Republic of Venezuela and situated in the United States of America. The parties also agree that in case of legal actions in courts of the United States of America, the assets of the Bolivarian Republic of Venezuela situated within Venezuelan territory are outside the jurisdiction of said courts.

**THIRD:** The parties also agree that under no circumstances may the courts of New York and/or the United States of America issue [*sic.*] or hear as the subject matter of a lawsuit any aspects inherent to the validity of the administrative procedure of accelerated redemption; they shall only hear aspects related to the indemnity and/or the timely payment or, at the utmost, to the legal and/or financial consequences of the accelerated redemption procedure. In this regard, the MEM, acting in behalf and representation of the Bolivarian Republic of Venezuela, submits to the contents of the 1976 Sovereign Immunity Act of the United States, and under no circumstances shall it avail itself of the Venezuelan courts in case of non-payment as far as this process is concerned. For this reason, once the lawsuit against the MEM culminates in any of the courts indicated above, the judgment may be enforced in any other court or tribunal of competent jurisdiction; therefore, the MEM has agreed to waive and not sue for exceptions such as immunity from jurisdiction, *forum non conveniens*, minimum contacts, indicating [*sic.*] another legal or judicial process during the proceeding before courts located in the Bolivarian Republic of Venezuela. This waiver also includes immunity to ancillary measures, objections or defenses of a nature similar to preventive measures, cautionary measures, preventive garnishments, attachments prior to the judgment, garnishment execution, execution of the judgment itself. The MEM also undertakes no to initiate any legal process in Venezuelan courts once the companies initiate complaints or judicial processes for collection in the courts of the city of New York and/or the United States of America.

**FOURTH:** This Addendum shall come into effect if, within the 24 months following delivery of the expert evaluator's report, the MEM should not have paid in full the indemnity established by the expert designated by both parties. In this clause, the MEM agrees to pay the companies late interest from the moment the expert chosen by the parties delivers his report, provided that the companies are obligated to initiate legal actions for collection. In the event that the MEM or another Public Administration body should pay the amount of the indemnity to the companies, the companies may not claim interest. In case of legal actions for collection by the companies, the MEM agrees to pay them [at] the rate of eight point five per cent (8.5%) per annum, as of the moment of the delivery of the

expert assessor's report, as well as such court costs and attorney's fees as may be appropriate.

**FIFTH:** The parties agree that the fees of the expert evaluator who may be designated under the General Terms and Conditions shall be paid by the MEM.

**SIXTH:** Domicile of the parties: Compañía Minera del Bajo Caroní (CAROMIN), C.A., and V.M.C. Mining Company, C.A.: Calle Cuenca, Manzana 7, Campo B de Ferrominera, Quinta Analu, Puerto Ordaz, Estado Bolívar, exclusively in the person of the companies' legal representative, Manuel Alfredo Fernández Gonzalo, and, in the event of the latter's absence, in the person of the judicial attorney-in-fact of said companies, Luis Andrés Guerrero Rosales, Esq. MEM: Consulate General of the Bolivarian Republic of Venezuela in the United States of America, Seventh Avenue at 51st Street, East, New York, New York 10222. In this case, the MEM has designated the Consul General of the Bolivarian Republic of Venezuela in the city of New York to deem himself summoned or notified of any action or lawsuit brought against the Bolivarian Republic of Venezuela in any state or federal court in the city of New York and/or the United States of America.

Let the legal representative of the aforesaid companies be notified, who shall sign at the bottom in token of agreement.

Let it be added to the separate folder of the administrative case file bearing number 2084.

In Caracas, this nineteenth (19th) day of the month of December, two thousand and three (2003).

*[Illegible signature]*

Eng. RAFAEL RAMIREZ

[There is a mostly illegible seal of the Ministry of Energy and Mines]

[Illegible signature]
I accept the terms and conditions set forth above
Date: *12/22/2003*

*Delivered by the Mining Processing Division*
*12/22/2003*
*[Illegible signature]*

# LOPEZ AND DURAN

**Interpreting and Translating**

420 South Dixie Highway, Suite 2L
Coral Gables, Florida  33146
Tel. (305)461-4699  * Fax(305)461-4799

CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
                 ) SS.
COUNTY OF DADE   )

Before me, a notary public in and for the State of Florida at large, appears

Nelson Duran, Ph.D., who is personally known to me, a certified court interpreter,

qualified by the Administrative Office of the United States Courts, for and on

behalf of Lopez and Duran Interpreting and Translating, who, after being duly sworn,

deposes and says that he is fully versed in the Spanish and the English languages,

and that the aforegoing is a true and correct translation of the attached document

consisting of _____ three _____ pages, and that this is the last of the attached.



_____
Nelson Duran, Ph.D.

Sworn to and subscribed this ___16th___ day of ___April___ , 200 7.

_____
MARLEN ABASCAL
Notary Public,
State of Florida at Large

My commission expires:

> MARLEN ABASCAL
> MY COMMISSION # DD 342829
> EXPIRES: August 2, 2008
> Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations.
Lopez and Duran Interpreting and Translating and its employees shall not be
liable for any damages due to negligence or error in typing or translation.



ABECIR



1

# Informe Técnico

RELACIONADO CON EL AVALÚO DE LAS CONCESIONES MINERAS, DENOMINADAS ALFA 1, 2 Y 3, UBICADAS EN EL SECTOR EL MEREY. MUNICIPIO AUTÓNOMO RAÚL LEONI. ESTADO BOLÍVAR, A LOS FINES DE LA DETERMINACIÓN DE LA INDEMNIZACIÓN INTEGRAL CORRESPONDIENTE A LA **COMPANIA MINERA DEL BAJO CARONI**, CAROMIN, C.A.

MARZO DE 2004





EXHIBIT

4

Av. San Juan Bosco - Edif. Torbes, Piso 2, Ofic. 31 - Al lado de Friday's - Telfs. 264.18.66 - 264.62.65 - Fax: 263.05.62 - Altamira - Caracas



ABECIR



2

**PRESENTACION**

| | |
|---|---|
| CONCESIONARIO: | COMPAÑÍA MINERA DEL BAJO CARONÍ, C.A. (CAROMIN) |
| ELABORADO POR: | ABECIR, C.A. |
| INGENIERO A CARGO: | ALFREDO E. BENZECRI P. <br> C.I. 4.116.209 <br> C.I.V. 26.618 <br> SOITAVE 324 <br> SUPERINTENDENCIA P-533 <br> FGDPB-J-025. <br> AJUSTADOR DE PERDIDAS I-878 <br> PERITO AVALUADOR I-548 |
| OBJETO DEL AVALUO: | CONOCER EL VALOR ACTUALIZADO DE LAS CONCESIONES MINERAS DENOMINADAS ALFA1, 2 Y 3 PARA PROCEDER A LA INDEMNIZACIÓN DE LA PROPIETARIA POR PARTE DEL MINISTERIO DE ENERGÍA Y MINAS |
| FECHA DEL AVALUO: | 18 DE MARZO DE 2.004 |

## RESUMEN DEL AVALUO

| DESCRIPCION: | CONCESIONES MINERAS ALFA 1, 2 Y 3 | | |
|---|---|---|---|
| UBICACIÓN: | SECTOR EL MEREY. MUNICIPIO AUTÓNOMO RAÚL LEONI. ESTADO BOLÍVAR | | |
| SUPERFICIE: | 1.500 HAS. BRUTAS | BRUTA EN AGUA = 375 HAS. EVALUADAS AGUA = 250 HAS | PORCENTAJE CONSIDERADO PARA CÁLCULO = 250 HAS = 66,66%. |
| | | BRUTAS TIERRA = 1000 HAS. EVALUADAS TIERRA = 227,9 HAS = 22,79% | PORCENTAJE CONSIDERADO PARA CÁLCULO DE LAS RESERVAS EVALUADAS = 156 HAS = 68,45% |
| TENORES: | OBTENIDOS | USADOS EN EVALUACION | |
| | ORO: 0,5 GR/M³ DIAMANTE: 0,048 CT/M³ | ORO: 0,2 – 0,3 GR/M³ DIAMANTE: 0,02 CTS/M³ | |
| VALOR AVALUO | $ 65.753.273,00 | | |

Av. San Juan Bosco - Edif. Torbes, Piso 2, Ofic. 31 - ¡Al lado de Friday's - Telfs. 264.18.66 - 264.52.55. Fax: ...



**ABECIR**

3

## CERTIFICACIÓN

EL TASADOR, ABAJO FIRMANTE CERTIFICA QUE:

a) EL AVALUADOR RESPONSABLE DEL INFORME CUMPLE CON LOS REQUISITOS PROFESIONALES VIGENTES DE LA REPÚBLICA DE VENEZUELA EN REFERENCIA A SU INSCRIPCIÓN EN SOITAVE, SUPERINTENDENCIA DE BANCOS, SUPERINTENDENCIA DE SEGUROS Y FOGADE.

b) EL AVALÚO CONTENIDO ES PRODUCTO DE MÉTODOS ESENCIALMENTE OBJETIVOS, CIENTÍFICOS Y UNIVERSALMENTE ADMITIDOS COMO JUSTOS, SIN QUE HAYA INFLUIDO EN SU TRABAJO NINGÚN OTRO FACTOR, INTENCIÓN O SENTIMIENTO PERSONAL QUE PUDIESE ALTERAR EN LO MAS MÍNIMO TANTO LOS DATOS O HIPÓTESIS DE TRABAJO, COMO EL RESULTADO OBTENIDO AL APLICAR LOS MENCIONADOS MÉTODOS.

c) NO TIENE NINGÚN INTERÉS, NI DIRECTO, NI INDIRECTO CON LA PROPIEDAD AVALUADA EN CUALQUIER POSIBLE OPERACIÓN COMERCIAL; NI LE LIGAN CON EL PROPIETARIO LAZOS FAMILIARES NI DE NINGUNA OTRA ÍNDOLE.

d) SUS SERVICIOS FUERON REQUERIDOS ÚNICA Y EXCLUSIVAMENTE EN SU CARÁCTER DE PROFESIONAL AVALUADOR CONCIENTE DE SUS DEBERES Y RESPONSABILIDADES.

e) NO ASUMIMOS NINGUNA RESPONSABILIDAD SOBRE LA TITULARIDAD DE LOS ACTIVOS TRATADOS O DISPOSICIONES QUE AFECTAN A LOS MISMOS.

f) NUESTROS ANÁLISIS, OPINIONES Y CONCLUSIONES FUERON DESARROLLADAS PARA ESTE INFORME EN EL TIEMPO QUE EL MISMO FUE ELABORADO, DE ACUERDO A LOS ESTÁNDARES DEL COLEGIO DE INGENIEROS DE VENEZUELA.

g) SE SUPONE LA NO-EXISTENCIA DE CONDICIONES OCULTAS EN LOS ACTIVOS, LAS CUALES AFECTEN NEGATIVAMENTE SU VALOR. DE IGUAL FORMA SE SUPONE QUE LAS INFORMACIONES SUMINISTRADAS POR LOS PROPIETARIOS DE LOS BIENES A AVALUAR SON CORRECTAS Y COMPLETAS DESDE EL MISMO MOMENTO DE SU RECEPCIÓN.



ABECIR ABECIR, C.A., EXPIDE LA PRESENTE CERTIFICACION POR MOTIVO DEL AVALÚO PRACTICADO A LAS LAS CONCESIONES MINERAS, DENOMINADAS ALFA 1, 2 Y 3, UBICADAS EN EL SECTOR EL MEREY. MUNICIPIO AUTÓNOMO RAÚL LEONI. ESTADO BOLÍVAR, PRESENTANDO A:

**EL MINISTERIO DE ENERGIA Y MINAS DE LA REPUBLICA BOLIVARIANA DE VENEZUELA Y A LA COMPAÑÍA MINERA DEL BAJO CARONI (CAROMIN, C.A.), CON OCASIÓN A LA DETERMINACIÓN DE LA INDEMNIZACIÓN INTEGRAL A QUE HACE REFERENCIA EL PLIEGO DE CONDICIONES SUSCRITO EN FECHA 17 DE DICIEMBRE DE 2003.**

REFERIDO A LA FECHA: 18 DE MARZO DE 2004

ABECIR, C.A

ING. ALFREDO BENZECRI

C.I.V. # 26.618

[Logo:]
ABECIR

[Rubber stamp:]

MINISTRY OF FINANCES
29 JUN, 2004
**R E C E I V E D**
OFFICE OF THE MINISTER
*[Illegible signature]*

# Technical Report

Related to the evaluation of the Mining Concessions known as ALFA 1, 2, and 3, located in the El Merey sector, Autonomous Municipality of Rafael Leoni, State of Bolívar, in order to determine the full indemnity for **COMPAÑIA MINERA DEL BAJO CARONI, CAROMIN, C.A.**

March 2, 2004

[There is a mostly illegible seal bearing the date 21 APR. 2004]

# PRESENTATION

| | |
|---|---|
| GRANTEE: | COMPAÑIA MINERA DEL BAJO CARONI, C.A. (CAROMIN) |
| PREPARED BY: | ABECIR, C.A. |
| ENGINEER IN CHARGE: | ALFREDO E. BENEZCRI P.<br>Id. C. 4,116,209<br>Ven. Assoc. Eng. 26,618<br>SOITAVE 324<br>SUPERINTENDENCY P-533<br>FGDPB-J-025<br>CASUALTY ADJUSTOR I-878<br>EXPERT EVALUATOR I-548 |
| PURPOSE OF EVALUATION: | To learn the updated value of the mining concessions known as ALFA 1, 2, and 3 in order to proceed to have the Ministry of Energy and Mines indemnify the owner. |
| DATE OF EVALUATION: | March 18, 2004 |

## SUMMARY OF THE EVALUATION

| DESCRIPTION: | Mining Concessions ALFA 1, 2, and 3 | | |
|---|---|---|---|
| LOCATION: | El Merey sector, Autonomous Municipality of Rafael Leoni, State of Bolívar | | |
| AREA: | 1,500 gross has. | Gross water area = 375 has. Evaluated water area = 250 has. | Percentage of total taken into consideration: 250 has. = 66.66% |
| | | Gross land area = 1,000 has. (50%) Evaluated land area = 227.9 has. = 22.79% | Percentage of total taken used to calculate evaluated reserves: 156 has. = 68.45% |
| TENORS: | OBTAINED<br>Gold: 0.5 gr/m$^3$<br>Diamond: 0.048 ct/ m$^3$ | USED FOR EVALUATION<br>Gold: 0.2 - 0.3  gr/ m$^3$<br>Diamond: 0.02 ct/ m$^3$ | |
| AMOUNT OF EVALUATION: | $65,753,273.00 | | |

3

# CERTIFICATE

The undersigned adjustor certifies that:

a) The evaluator responsible for the report meets the professional requirements in effect in the Republic of Venezuela in connection with his registration with SOITAVE, the Office of the Superintendent of Banks, the Office of the Superintendent of Insurance, and FOGADE.

b) The evaluation herein contained is the product of essentially objective and scientific methods, universally accepted as fair, his work not having been influenced by any other factor, intent, or personal feeling that could in the least alter both the data or working hypotheses and the results obtained when applying said methods.

c) He has no interest, whether direct or indirect, in the property being evaluated in any possible business operation, nor is he related to the owner by family or any other ties.

d) His services were solicited solely and exclusively in his capacity as a professional evaluator, conscious of his duties and responsibilities.

e) We assume no liability as to the ownership of the assets under discussion or as to any provisions affecting them.

f) Our analyses, opinions, and conclusions were developed for this report at the time it was prepared, in accordance with the standards of the Venezuelan Association of Engineers.

g) The non-existence is assumed of hidden conditions in the assets that may negatively impact their value. It is likewise assumed that the information provided by the owners of the property to be evaluated is correct and complete as of the moment it is received.

ABECIR, C.A., issues the present certificate in connection with the evaluation of the Mining Concessions known as DELTA A, B, C, and D, located in the Río Claro sector, Autonomous Municipality of Rafael Leoni, State of Bolívar, presenting [sic.] to

**THE MINISTRY OF ENERGY AND MINES OF THE BOLIVARIAN REPUBLIC OF VENEZUELA and to COMPAÑIA MINERA DEL BAJO CARONI (CAROMIN, C.A.), IN CONNECTION WITH THE DETERMINATION OF THE FULL INDEMNITY REFERRED TO IN THE DOCUMENT OF TERMS AND CONDITIONS SIGNED ON DECEMBER 17, 2003**

Referred to this date: March 18, 2004

ABECIR, C.A.

[Illegible signature]
Eng. Alfredo Benezcri
Ven. Assoc. Eng. # 26,618

4

# CONTENTS

DESCRIPTION                                                                    PAGE

Executive Summary                                                               6
Scope                                                                           8
Descriptive Report                                                              9
-- Introduction                                                                13
-- Location and Area                                                           14
-- Local Geology of Alfa Concessions' Placer Deposits                         18
-- Alluvial Deposition Model                                                   20
-- Origins of the Sediments                                                    22
-- Features of the Ore Fields                                                  23
Information Reviewed to Support the Evaluation                                 26
Information Studied and Reviewed in Support of the Evaluation                  27
Criteria for Reviewing the Technical Reports                                   30
Reserve Estimates                                                             32
Methodology                                                                   35
Proven Reserves. Review Methods                                               38
Buildings                                                                     45
Improvements                                                                  48
Evaluation                                                                    50
Photographs

5

## EXECUTIVE SUMMARY

1.  On February 9, 2004, official communication DCM-DTM-028 appointed the company ABECIR, represented by its president, Eng. Alfredo Benezcri, as Expert Evaluating Engineer in order to evaluate the gold- and diamond-bearing mining concessions known as Alfa 1, Alfa 2, and Alfa 3, located in El Merey, State of Bolívar.

2.  The scope of the work was the full indemnity of COMPAÑIA MINERA DEL BAJO CARONI (CAROMIN, C.A.), as the result of the accelerated redemption of the aforementioned concessions, the title to which it held.

3.  In order to determine the full indemnity, the need was established to establish a methodology aimed at evaluating the assets found in the area of said concessions, including proven reserves.

4.  The inclusion of the reserves in order to determine the full indemnity stems not only from the presence of actual or consequential damages but also from the existence of lost profit or future damages, arising out of the obvious presence of a loss of opportunity caused by the action of the Administration in deciding on the accelerated redemption of the aforesaid concession, as represented in official communication DGM-DCM-DTM-516 dated December 2, 2003.

5.  Legal doctrine on this matter holds that revocation or redemption of the contract is not a sanction upon the contractor, as the fact that gives rise to it is not a breach of contract but the pursuit of the public's best interest. Therefore, any accelerated redemption brings with it an indemnity in favor of the co-contractor, which must

6

be a full one and include, therefore, both consequential damages and lost profit. (BADELL & GRAU, Contratos Administrativos [Administrative Contracts]. Colección Cuadernos Jurídicos, No. 5, page 156. Caracas, 1999).

6.     In furtherance of the work that was commissioned, the concessions were visited in order to learn of the assets susceptible of being evaluated. A listing was prepared that excluded mobile assets.

7.     Samples were taken in order to learn of the mines' potential.

8.     The assets which, in the evaluator's opinion, are part of the scope of the work, were quantified.

9.     The appropriate calculations were done, and the value of the evaluation totals a full amount of $ 65,753,273.00.

AB



**ABECIR**

1

# Informe Técnico

Relacionado con el avalúo de las Concesiones Mineras, denominadas DELTA A, B, C y D, ubicadas en el Sector Río Claro, Bajo Caroní, Municipio Autónomo Raúl Leoni. Estado Bolívar, a los fines de la determinación de la indemnización integral correspondiente a la COMPAÑIA V.M.C. MINING COMPANY, C.A.

Marzo 2.004

*Recibido por VMC mining Company*
*22 Abril 2004*
*Representante legal*

EXHIBIT
5

Av. San Juan Bosco. Edif. Torbes, Piso 2, Ofic. 31• Telf.: (0212) 264.6265

2



ABECIR

## PRESENTACION

| | |
|---|---|
| CONCESIONARIO: | COMPAÑÍA V.M.C. MINING COMPANY, C.A. |
| ELABORADO POR: | ABECIR, C.A. |
| INGENIERO A CARGO: | ALFREDO E. BENZECRI P.<br>C.I. 4.116.209<br>C.I.V. 26.618<br>SOITAVE 324<br>SUPERINTENDENCIA P-533<br>FGDPB-J-025.<br>AJUSTADOR DE PERDIDAS I-878<br>PERITO AVALUADOR I-548 |
| OBJETO DEL AVALUO: | Conocer el valor actualizado de las concesiones mineras denominadas DELTA A, B. C y D para proceder a la indemnización de la propietaria por parte del Ministerio de Energía y Minas |
| FECHA DEL AVALUO: | 15 de marzo de 2.004 |

## RESUMEN DEL AVALUO

| DESCRIPCION: | Concesiones Mineras DELTA A, B, C y D. | | |
|---|---|---|---|
| UBICACIÓN: | Sector Río Claro, Bajo Caroní. Municipio Autónomo Raúl Leoni. Estado Bolívar | | |
| SUPERFICIE: | 1.600 Has. brutas | Brutas Exploradas: 767,50 has. (48%). | Porcentaje considerado del total: 48%. |
| | | Evaluadas: 383,75 has. (50%). | Porcentaje considerado para cálculo de las reservas evaluadas: 50% |
| TENORES: | OBTENIDOS | | USADOS EN EVALUACION |
| | Oro: 0,586 gr/m³<br>Diamante: 0,0965 ct/m³ | | Oro: 0,388 gr/m³<br>Diamante: 0,0266 cts/m³ |
| VALOR AVALUO | $ 144.011.173,oo | | |



**ABECIR**

3

## CERTIFICACION

El Tasador, abajo firmante certifica que:

a) El avaluador responsable del informe cumple con los requisitos profesionales vigentes de la República de Venezuela en referencia a su inscripción en SOITAVE, Superintendencia de Bancos, Superintendencia de Seguros y FOGADE.

b) El avalúo contenido es producto de métodos esencialmente objetivos, científicos y universalmente admitidos como justos, sin que haya influido en su trabajo ningún otro factor, intención o sentimiento personal que pudiese alterar en lo mas mínimo tanto los datos o hipótesis de trabajo, como el resultado obtenido al aplicar los mencionados métodos.

c) No tiene ningún interés, ni directo, ni indirecto con la propiedad avaluada en cualquier posible operación comercial; ni le ligan con el propietario lazos familiares ni de ninguna otra índole.

d) Sus servicios fueron requeridos única y exclusivamente en su carácter de profesional avaluador conciente de sus deberes y responsabilidades.

e) No asumimos ninguna responsabilidad sobre la <u>titularidad de los activos tratados</u> o disposiciones que afectan a los mismos.

f) Nuestros análisis, opiniones y conclusiones fueron desarrolladas para este informe en el tiempo que el mismo fue elaborado, de acuerdo a los estándares del Colegio de Ingenieros de Venezuela.

g) Se supone la no-existencia de condiciones ocultas en los activos, las cuales afecten negativamente su valor. De igual forma se supone que las informaciones suministradas por los propietarios de los bienes a avaluar son correctas y completas desde el mismo momento de su recepción.

ABECIR, C.A., expide la presente CERTIFICACION por motivo del avalúo practicado a las las Concesiones Mineras, denominadas DELTA A, B, C, y D, ubicadas en el Sector Río Claro. Municipio Autónomo Raúl Leoni. Estado Bolívar, presentando a:

**EL MINISTERIO DE ENERGIA Y MINAS DE LA REPUBLICA BOLIVARIANA DE VENEZUELA y a V.M.C. MINING COMPANY,C.A., CON OCASIÓN A LA DETERMINACIÓN DE LA INDEMNIZACIÓN INTEGRAL A QUE HACE REFERENCIA EL PLIEGO DE CONDICIONES SUSCRITO EN FECHA 17 DE DICIEMBRE DE 2003.**

Referido a la fecha: 15 de marzo de 2004

22 Abril/ 2004

Repuresentante Legal VMC Mining Campany C.A.

Ing. Alfredo Benzecri

C.I.V. # 26.618

Av. San Juan Bosco. Edif. Torbes, Piso 2, Ofic. 31· Telf.: (0212) 264.6265

ABECIR

4

## CONTENIDO

| DESCRIPCIÓN | PAG. |
|---|---|
| Resumen Ejecutivo | 05 |
| Alcance | 06 |
| Memoria Descriptiva | 07 |
| Reservas Probadas Minables de Minerales Preciosos | 11 |
| - Introducción | 11 |
| - Localización y Extensión | 12 |
| - Geología local de los depósitos de placer de las concesiones alfa | 15 |
| - Modelo de deposición aluvional | 17 |
| - Origen de los sedimentos | 19 |
| - Características de los yacimientos | 20 |
| Información analizada para soporte de la evaluación | 22 |
| Información estudiada y analizada en soporte de la evaluación | 23 |
| Criterios para el análisis de los informes técnicos | 26 |
| Estimación de Reservas | 28 |
| Localización | 30 |
| Metodología | 31 |
| Reservas Probadas. Metodología de Análisis | 34 |
| Construcciones | 39 |
| Bienhechurías | 42 |
| Avalúo | 44 |



ABECIR

## RESUMEN EJECUTIVO

1. En fecha 30 de enero de 2004, según oficio DCM-DTM-028, se nombra a la empresa ABECIR, en la persona de su presidente, Ing. Alfredo Benzecri, Ingeniero Experto Perito Avaluador, a fin de tasar las Concesiones Mineras Auríferas y de Diamantes conocidas como DELTA A, DELTA B, DELTA C y DELTA D, ubicadas en el Sector Río Claro, Bajo Caroní, Estado Bolívar.

2. Se conoció como alcance del trabajo, la indemnización integral correspondiente a la Compañía V.M.C. MINING COMPANY, C.A., con ocasión al rescate anticipado de las concesiones antes referidas, de las cuales era titular.

3. Para determinar la indemnización integral se estableció la necesidad de establecer una metodología tendiente a la valoración de los activos presentes en el área correspondiente a dichas concesiones, incluyendo las reservas probadas.

4. La inclusión de las reservas, a los fines de la determinación de la indemnización integral, deriva de la presencia – no solo – de un daño actual o emergente, sino por la existencia de un lucro cesante o daño futuro, que surge por la evidente presencia de una perdida de oportunidad causada por la actuación de la administración, al haber acordado el rescate anticipado de las concesiones indicadas, según lo declarado en el oficio DGM-DTM-516, de fecha 02 de Diciembre de 2003.

5. La doctrina jurídica sobre la materia señala que la revocatoria o rescate del contrato no constituye una sanción para el co-contratante, pues el hecho que le da origen no es el incumplimiento



ABECIR

6

del contrato, sino la satisfacción del mejor interés publico. Por lo tanto, todo rescate anticipado trae aparejada una indemnización a favor del co-contratante, que debe ser integral y comprender, en consecuencia, tanto el daño emergente como el lucro cesante. (BADELL & GRAU, Contratos Administrativos. Colección Cuadernos Jurídicos, No 5, p156, Caracas, 1999 ).

6. En atención al cumplimiento del trabajo encomendado se procedió a visitar las concesiones a fin de conocer los activos susceptibles a ser evaluados. Se elaboro un listado, excluyendo los activos por ser móviles.

7. Se lograron muestras a fin de conocer el potencial de las minas.

8. Se cuantificaron los activos que a criterio del avaluador, forman parte del alcance del trabajo.

9. Se realizaron los cálculos correspondientes y el valor avalúo asciende a la cantidad integral de 144.011.173,oo, subdividido en los siguientes montos por Concesión:

Delta A =   33.410.592,14 $
Delta B =   47.235.664,85 $
Delta C =   29.637.499,42 $
Delta D =   33.727.416,73 $

1

[Logo:]
ABECIR

# Technical Report

Related to the evaluation of the Mining
Concessions known as DELTA A, B, C, and
D, located in the Río Claro sector, Bajo
Caroní, Autonomous Municipality of Rafael
Leoni, State of Bolívar, in order to
determine the full indemnity for
COMPAÑIA V.M.C. MINING
COMPANY, C.A.

March 2, 2004

[Handwritten:]

*Received by VMC Mining Company*
*22 April 2004*
*[Illegible signature]*
*Legal Representative*

# PRESENTATION

| | |
|---|---|
| GRANTEE: | COMPAÑIA V.M.C. MINING COMPANY, C.A. |
| PREPARED BY: | ABECIR, C.A. |
| ENGINEER IN CHARGE: | ALFREDO E. BENEZCRI P. |
| | Id. C. 4,116,209 |
| | Ven. Assoc. Eng. 26,618 |
| | SOITAVE 324 |
| | SUPERINTENDENCY P-533 |
| | FGDPB-J-025 |
| | CASUALTY ADJUSTOR I-878 |
| | EXPERT EVALUATOR I-548 |

PURPOSE OF EVALUATION:    To learn the updated value of the mining concessions known as DELTA A, B, C, and D in order to proceed to have the Ministry of Energy and Mines indemnify the owner.

DATE OF EVALUATION:    March 15, 2004

## SUMMARY OF THE EVALUATION

| DESCRIPTION: | Mining Concessions DELTA A, B, C, and D. | | |
|---|---|---|---|
| LOCATION: | Río Claro sector, Bajo Caroní, Autonomous Municipality of Rafael Leoni, State of Bolívar | | |
| AREA: | 1,600 gross has. | Gross explored area: 767.50 has. (48%) | Percentage of total taken into consideration: 48% |
| | | Evaluated area: 383.75 has. (50%) | Percentage of total taken used to calculate evaluated reserves: 50% |
| TENORS: | OBTAINED Gold: 0.586 gr/ m$^3$ Diamond: 0.0965 ct/ m$^3$ | USED FOR EVALUATION Gold: 0.388 gr/ m$^3$ Diamond: 0.0266 ct/ m$^3$ | |
| AMOUNT OF EVALUATION: | $144,011,173.00 | | |

# CERTIFICATE

The undersigned adjustor certifies that:

a) The evaluator responsible for the report meets the professional requirements in effect in the Republic of Venezuela in connection with his registration with SOITAVE, the Office of the Superintendent of Banks, the Office of the Superintendent of Insurance, and FOGADE.

b) The evaluation herein contained is the product of essentially objective and scientific methods, universally accepted as fair, his work not having been influenced by any other factor, intent, or personal feeling that could in the least alter both the data or working hypotheses and the results obtained when applying said methods.

c) He has no interest, whether direct or indirect, in the property being evaluated in any possible business operation, nor is he related to the owner by family or any other ties.

d) His services were solicited solely and exclusively in his capacity as a professional evaluator, conscious of his duties and responsibilities.

e) We assume no liability as to the ownership of the assets under discussion or as to any provisions affecting them.

f) Our analyses, opinions, and conclusions were developed for this report at the time it was prepared, in accordance with the standards of the Venezuelan Association of Engineers.

g) The non-existence is assumed of hidden conditions in the assets that may negatively impact their value. It is likewise assumed that the information provided by the owners of the property to be evaluated is correct and complete as of the moment it is received.

ABECIR, C.A., issues the present certificate in connection with the evaluation of the Mining Concessions known as DELTA A, B, C, and D, located in the Río Claro sector, Autonomous Municipality of Rafael Leoni, State of Bolívar, presenting [*sic.*] to

**THE MINISTRY OF ENERGY AND MINES OF THE BOLIVARIAN REPUBLIC OF VENEZUELA and to V.M.C. MINING COMPANY, C.A., IN CONNECTION WITH THE DETERMINATION OF THE FULL INDEMNITY REFERRED TO IN THE DOCUMENT OF TERMS AND CONDITIONS SIGNED ON DECEMBER 17, 2003**

Referred to this date: March 15, 2004

[Illegible signature]
Eng. Alfredo Benezcri
Ven. Eng. Assoc. # 26,6128

[Handwritten:]
*22 April 2004*
*[Illegible signature]*
*Legal Representative V.M.C. Mining Company C.A.*

4

# CONTENTS

DESCRIPTION                                                                PAGE

Executive Summary                                                            5
Scope                                                                        6
Descriptive Report                                                           7
Proven Extractable Reserves of Precious Minerals                            11
-- Introduction                                                             11
-- Location and Area                                                        12
-- Local Geology of Alfa [*sic.*] Concessions' Placer Deposits             15
-- Alluvial Deposition Model                                                17
-- Origins of the Sediments                                                 19
-- Features of the Ore Fields                                               20
Information Reviewed to Support the Evaluation                              22
Information Studied and Reviewed in Support of the Evaluation               23
Criteria for Reviewing the Technical Reports                                26
Reserve Estimates                                                           28
Location                                                                     30
Methodology                                                                 31
Proven Reserves. Review Methods                                             34
Buildings                                                                    39
Improvements                                                                 42
Evaluation                                                                   44

## EXECUTIVE SUMMARY

1. On January 30, 2004, official communication DCM-DTM-028 appointed the company ABECIR, represented by its president, Eng. Alfredo Benezcri, as Expert Evaluating Engineer in order to evaluate the gold- and diamond-bearing mining concessions known as DELTA A, DELTA B, DELTA C, and DELTA D, located in the Río Claro sector, Bajo Caroní, State of Bolívar.

2. The scope of the work was the full indemnity of the company V.M.C. MINING COMPANY, C.A., as the result of the accelerated redemption of the aforementioned concessions, the title to which it held.

3. In order to determine the full indemnity, the need was established to establish a methodology aimed at evaluating the assets found in the area of said concessions, including proven reserves.

4. The inclusion of the reserves in order to determine the full indemnity stems not only from the presence of actual or consequential damages but also from the existence of lost profit or future damages, arising out of the obvious presence of a loss of opportunity caused by the action of the Administration in deciding on the accelerated redemption of the aforesaid concession, as represented in official communication DGM-DTM-516 dated December 2, 2003.

5. Legal doctrine on this matter holds that revocation or redemption of the contract is not a sanction upon the contractor, as the fact that gives rise to it is not a breach of contract but the pursuit of the public's best interest. Therefore, any accelerated redemption brings with it an indemnity in favor of the co-contractor, which must

be a full one and include, therefore, both consequential damages and lost profit. (BADELL & GRAU, Contratos Administrativos [Administrative Contracts]. Colección Cuadernos Jurídicos, No. 5, page 156. Caracas, 1999).

6.   In furtherance of the work that was commissioned, the concessions were visited in order to learn of the assets susceptible of being evaluated. A listing was prepared that excluded mobile assets.

7.   Samples were taken in order to learn of the mines' potential.

8.   The assets which, in the evaluator's opinion, are part of the scope of the work, were quantified.

9.   The appropriate calculations were done, and the value of the evaluation totals a full amount of 144,011,173.00, subdivided into the following amounts per concession:

Delta A =      $ 33,410,592.14

Delta B =      $ 47,235,664.85

Delta C =      $ 29,637,499.42

Delta D =      $ 33,727,416.73