

REPUBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE ENERGIA Y MINAS
Despacho del Ministro

# ADDENDUM

Por cuanto, en fecha 17 de diciembre de 2003, este Ministerio de Energía y Minas (MEM) por órgano de la Dirección General de Minas ha suscrito el Pliego de Condiciones con el representante legal de las sociedades mercantiles Compañía Minera del Bajo Caroní (CAROMIN), C.A. y V.M.C Mining Company, C.A. (LAS EMPRESAS), a los fines de darle continuidad al procedimiento administrativo de rescate anticipado; por cuanto, el Pliego de Condiciones anteriormente señalado, no estableció las consecuencias de los posibles incumplimientos a los acuerdos en él contenido por ambas partes, por lo tanto, este Ministerio, actuando en nombre y representación de la República Bolivariana de Venezuela, acuerda lo siguiente:



**PRIMERO:** En caso de existir algún incumplimiento por parte de las empresas arriba señaladas, tales como: a) La iniciación de nuevos juicios en contra de la República Bolivariana de Venezuela, el MEM y/o CVG-EDELCA relacionado al rescate anticipado contenido en la Providencia Administrativa No. 003, de fecha 02 de diciembre de 2003. b) No proporcionar al perito avaluador que sea designado los documentos y data de las concesiones mineras Alfa1, Alfa 2, Alfa 3, Delta A, Delta B, Delta C y Delta D. c) No cumplir con las obligaciones asumidas en el Pliego de Condiciones. Se elige como domicilio especial y excluyente, de cualquier otro, a la ciudad de Caracas, a la jurisdicción de cuyos tribunales se someten ambas partes; así como, la legislación y la ley aplicable será la de la República Bolivariana de Venezuela.

**SEGUNDO:** En caso de incumplimiento por parte del MEM, se elige como domicilio especial y excluyente, de cualquier otro, a la ciudad de Nueva York, estado de Nueva York, Estados Unidos de América, a la jurisdicción de los tribunales del estado de Nueva York y se regirá el proceso por la Ley o estatutos que gobiernen a dicho (s) tribunal (es). Se entiende por incumplimiento del MEM, lo siguiente: a) Contravenir el contenido de la Cláusula Quinta del Pliego de Condiciones. b) No proporcionar al perito que sea designado, permiso de acceso al área de las concesiones mineras. La ley aplicable en este caso, será la de Estados Unidos de América. No obstante lo anterior, las parte acuerdan que la empresas tendrán el derecho de intentar la acción de cobro de dinero en cualquier otro tribunal o corte de los Estados Unidos de América, en cuyo caso la aplicación de la Ley será la de el estado donde este ubicado dicho tribunal. Asimismo, las partes acuerdan que las empresas tendrán el derecho de solicitar y ejecutar medidas precautelativas, precautelares, embargo preventivo, secuestros previos al fallo, ejecución de embargo, ejecución del propio fallo en cualquier otro tribunal diferente a los de la ciudad de Nueva York. Por otra parte el MEM acuerda que cualquier medida preventiva de embargo, secuestro o de naturaleza similar decretada por cualquier tribunal podrá ser ejecutada por cualquier otro tribunal de Jurisdicción competente. Por otra parte, el MEM, reconoce que en la celebración del Pliego de Condiciones

asi como en este addendum actúa en nombre y representación de la Republica Bolivariana de Venezuela, por lo que las empresas tendrán derecho de ejecutar las medidas aquí mencionadas contra cualquier activo(s), ingreso(s) o propiedad(es) perteneciente(s) a la Republica Bolivariana de Venezuela que se encuentren ubicado en los Estados Unidos de América. Asimismo las partes acuerdan que en caso de acciones legales en los tribunales de Estados Unidos de América, quedan fuera de la Jurisdicción de dichos tribunales, los activos, de la Republica Bolivariana de Venezuela ubicados dentro de territorio venezolano.



**TERCERO:** Las partes, igualmente acordaron, que bajo ninguna circunstancia los tribunales de Nueva York y/o de los Estados Unidos de América podrán emitir o conocer como materia de juicio aspectos inherentes a la validez del proceso administrativo de rescate anticipado, sólo considerarán aspectos referidos a la indemnización y/o al pago oportuno, o a lo sumo a las consecuencias legales y/o económicas del proceso del rescate anticipado. En tal sentido, el MEM, actuando en nombre y representación de la República Bolivariana de Venezuela, se somete a lo contenido en la Ley sobre la Inmunidad Soberana Extranjera de Estados Unidos de 1976, y bajo ningún respecto utilizará los tribunales venezolanos en caso de incumplimiento de pago, en cuanto a este proceso. Es por ello que, una vez culminado el juicio en contra del MEM, en alguno de los tribunales arriba señalados, la sentencia se podrá hacer cumplir en cualquier otro tribunal o Corte de jurisdicción competente; por lo tanto, el MEM ha acordado renunciar y no demandar excepciones tales como la inmunidad de la jurisdicción, foro no conveniente, contactos mínimos, señalar otro proceso legal o judicial durante el procedimiento por ante tribunales ubicados en la República Bolivariana de Venezuela. Esta renuncia también incluye inmunidad a medidas accesorias, excepciones o defensas de naturaleza similar a medidas precautelativas, precautelares, embargo preventivo, secuestros previos al fallo, ejecución de embargo, ejecución del propio fallo. Asimismo, el MEM se compromete a no iniciar ningún proceso legal en tribunales venezolanos, una vez que las empresas inicien demandas o procesos judiciales de cobro en los tribunales de la ciudad de Nueva York y/o los Estados Unidos de América.

**CUARTO:** Este addendum entrará en vigencia, si a los 24 meses siguientes a la entrega del informe del perito avaluador, el MEM no hubiera cancelado la indemnización integral que llegue a fijar el perito designado por ambas partes. El MEM acuerda en esta cláusula cancelar intereses moratorios a las empresas desde el momento en que el perito escogido por las partes entregue su informe respectivo, siempre que las empresas sean obligadas a iniciar acciones legales de cobro. En caso que el MEM u otro organismo de la Administración Pública cancele el monto indemnizatorio a las empresas, las mismas no podrán reclamar pago de intereses. En caso de acciones legales de cobro por parte de las empresas, el MEM acuerda en cancelar a las mismas la tasa del Ocho coma Cinco (8,5%) por ciento anual, a partir del momento de la entrega del informe del perito avaluador, así como también los costos de juicio(s) y los honorarios de abogado a que haya lugar.

**QUINTA:** Las partes acuerdan que los honorarios del perito avaluador que sea

designado conforme al pliego de condiciones serán cancelados por el MEM.

**SEXTA:** Domicilio de las partes: Compañía Minera del Bajo Caroní, (CAROMIN, C.A.) y V.M.C Mining Company, C.A.: Calle Cuenca, Manzana 7, Campo B de Ferrominera, Quinta Analu, Puerto Ordaz, Estado Bolívar, exclusivamente en la persona del Representante Legal de las empresas, Manuel Alfredo Fernández Gonzalo, y en caso de ausencia de éste, en la persona del apoderado judicial de las mismas, abogado Luis Andrés Guerrero Rosales. MEM: Consulado General de la República Bolivariana de Venezuela en Estados Unidos de América, Séptima Avenida con Calle 51 Este, Nueva York, Nueva York 10022. En este caso, el MEM ha designado al Cónsul General de la República Bolivariana de Venezuela en la ciudad de Nueva York, y en caso de ausencia de éste, a cualquier otro oficial de dicho consulado para darse por citado o notificado de cualquier acción o juicio intentado en contra de la República Bolivariana de Venezuela, en cualquier corte estatal o federal en la ciudad de Nueva York y/o de los Estados Unidos de América.

Notifíquese al representante legal de las empresas anteriormente mencionadas, quien deberá firmar al pie en señal de conformidad.

Agréguese a la carpeta separada del expediente administrativo identificado con el número 2084.

En Caracas, a los diecinueve (19) días del mes de diciembre del año dos mil tres (2003).

Ing. RAFAEL RAMIREZ

Acepto los términos y condiciones arriba señalados
Fecha: 22/12/2003

BOLIVARIAN REPUBLIC OF VENEZUELA
**MINISTRY OF ENERGY AND MINES**
Office of the Minister

### ADDENDUM

Whereas on December 17, 2003, this Ministry of Energy and Mines (MEM), acting through the Office of the Director General of Mines, signed the General Terms and Conditions with the legal representative of the mercantile corporations Compañía Minera del Bajo Caroní (CAROMIN), C.A., and V.M.C. Mining Company, C.A. (THE COMPANIES), in order to give continuity to the administrative procedure of accelerated redemption; whereas the aforesaid General Terms and Conditions did not establish the consequences of any possible breach by either party of the agreements therein contained; now, therefore, this Ministry, acting in behalf and representation of the Bolivarian Republic of Venezuela, resolves the following:

**FIRST:** In case that there should exist any breach on the part of the companies indicated above, such as: a) The commencement of new lawsuits against the Bolivarian Republic of Venezuela, the MEM, and/or CVG-EDELCA, related to the accelerated redemption contained in Administrative Order No. 003 of December 2, 2003; b) The failure to provide the expert evaluator who may be designated with documents and data related to the mining concessions Alfa 1, Alfa 2, Alfa 3, Delta A, Delta B, Delta C, and Delta D; c) Not complying with the obligations assumed under the General Terms and Conditions. [sic.] The city of Caracas is elected as special domicile, to the exclusion of any other, and both parties submit to the jurisdiction of the courts thereof; likewise, the applicable legislation and law shall be those of the Bolivarian Republic of Venezuela.

**SECOND:** In case of a breach on the part of the MEM, the city of New York, State of New York, United States of America, is elected as special domicile, to the exclusion of any other, under the jurisdiction of the courts of the State of New York, and the process shall be governed by the law or statute governing said court(s). A breach on the part of the MEM is understood to mean the following: a) Contravening the contents of Clause Five of the General Terms and Conditions; b) Not granting permission to the expert who may be designated to have access to the area of the mining concessions. The applicable law in this case shall be that of the United States of America. The foregoing notwithstanding, the companies shall be entitled to bring an action for the collection of monies in any other tribunal or court of the United States of America, in which case the applicable law shall be the law of the state where said court is located. Likewise, the parties agree that the companies shall have the right to ask for and execute preventive measures, cautionary measures, preventive garnishments, attachments prior to judgment, executions of garnishments, execution of the judgment itself in any other court different from those of the city of New York. On the other hand, the MEM agrees that any preventive measure, whether a garnishment, an attachment, or any other of a similar nature, ordered by any

court, may be executed by any other court of competent jurisdiction. On the other hand, the MEM acknowledges that in executing the General Terms and Conditions and this Addendum it is acting in behalf and representation of the Bolivarian Republic of Venezuela, and therefore the companies shall be entitled to execute the measures mentioned herein against any assets, income, or property belonging to the Bolivarian Republic of Venezuela and situated in the United States of America. The parties also agree that in case of legal actions in courts of the United States of America, the assets of the Bolivarian Republic of Venezuela situated within Venezuelan territory are outside the jurisdiction of said courts.

**THIRD:** The parties also agree that under no circumstances may the courts of New York and/or the United States of America issue [sic.] or hear as the subject matter of a lawsuit any aspects inherent to the validity of the administrative procedure of accelerated redemption; they shall only hear aspects related to the indemnity and/or the timely payment or, at the utmost, to the legal and/or financial consequences of the accelerated redemption procedure. In this regard, the MEM, acting in behalf and representation of the Bolivarian Republic of Venezuela, submits to the contents of the 1976 Sovereign Immunity Act of the United States, and under no circumstances shall it avail itself of the Venezuelan courts in case of non-payment as far as this process is concerned. For this reason, once the lawsuit against the MEM culminates in any of the courts indicated above, the judgment may be enforced in any other court or tribunal of competent jurisdiction; therefore, the MEM has agreed to waive and not sue for exceptions such as immunity from jurisdiction, *forum non conveniens*, minimum contacts, indicating [sic.] another legal or judicial process during the proceeding before courts located in the Bolivarian Republic of Venezuela. This waiver also includes immunity to ancillary measures, objections or defenses of a nature similar to preventive measures, cautionary measures, preventive garnishments, attachments prior to the judgment, garnishment execution, execution of the judgment itself. The MEM also undertakes no to initiate any legal process in Venezuelan courts once the companies initiate complaints or judicial processes for collection in the courts of the city of New York and/or the United States of America.

**FOURTH:** This Addendum shall come into effect if, within the 24 months following delivery of the expert evaluator's report, the MEM should not have paid in full the indemnity established by the expert designated by both parties. In this clause, the MEM agrees to pay the companies late interest from the moment the expert chosen by the parties delivers his report, provided that the companies are obligated to initiate legal actions for collection. In the event that the MEM or another Public Administration body should pay the amount of the indemnity to the companies, the companies may not claim interest. In case of legal actions for collection by the companies, the MEM agrees to pay them [at] the rate of eight point five per cent (8.5%) per annum, as of the moment of the delivery of the

expert assessor's report, as well as such court costs and attorney's fees as may be appropriate.

**FIFTH:** The parties agree that the fees of the expert evaluator who may be designated under the General Terms and Conditions shall be paid by the MEM.

**SIXTH:** Domicile of the parties: Compañía Minera del Bajo Caroní (CAROMIN), C.A., and V.M.C. Mining Company, C.A.: Calle Cuenca, Manzana 7, Campo B de Ferrominera, Quinta Analu, Puerto Ordaz, Estado Bolívar, exclusively in the person of the companies' legal representative, Manuel Alfredo Fernández Gonzalo, and, in the event of the latter's absence, in the person of the judicial attorney-in-fact of said companies, Luis Andrés Guerrero Rosales, Esq. MEM: Consulate General of the Bolivarian Republic of Venezuela in the United States of America, Seventh Avenue at 51st Street, East, New York, New York 10222. In this case, the MEM has designated the Consul General of the Bolivarian Republic of Venezuela in the city of New York to deem himself summoned or notified of any action or lawsuit brought against the Bolivarian Republic of Venezuela in any state or federal court in the city of New York and/or the United States of America.

Let the legal representative of the aforesaid companies be notified, who shall sign at the bottom in token of agreement.

Let it be added to the separate folder of the administrative case file bearing number 2084.

In Caracas, this nineteenth (19th) day of the month of December, two thousand and three (2003).

*[Illegible signature]*

Eng. RAFAEL RAMIREZ

[There is a mostly illegible seal of the Ministry of Energy and Mines]

[Illegible signature]
I accept the terms and conditions set forth above
Date: *12/22/2003*

*Delivered by the Mining Processing Division*
*12/22/2003*
*[Illegible signature]*

# LOPEZ AND DURAN
### Interpreting and Translating
420 South Dixie Highway, Suite 2L
Coral Gables, Florida 33146
Tele: (305)461-4699 * Fax: (305)461-4799

## CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
                 ) SS.
COUNTY OF DADE   )

Before me, a notary public in and for the State of Florida at large, appears Nelson Duran, Ph.D., who is personally known to me, a certified court interpreter, qualified by the Administrative office of the United States Courts, for and on behalf of Lopez and Duran Interpreting and Translating, who, after being duly sworn, deposes and says that he is fully versed in the Spanish and the English languages, and that the aforegoing is a true and correct translation of the attached document consisting of ___three___ pages, and that this is the last of the attached.

Nelson Duran, Ph.D.

Sworn to and subscribed this __10th__ day of __October__, 200_7_.

MARLEN ABASCAL
Notary Public,
State of Florida at Large

My commission expires:



MARLEN ABASCAL
MY COMMISSION # DD 342829
EXPIRES: August 2, 2008
Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations. Lopez and Duran Interpreting and Translating and its employees shall not be liable for any damages due to negligence or error in typing or translation.