
Gobierno Bolivariano de Venezuela | Ministerio de Industrias Básicas y Minería


RECIBIDO
REPÚBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE INDUSTRIAS BÁSICAS Y MINERÍA
30 MAR. 2007
RECIBIDO POR: Jhon Reyes
HORA: 4:22 pm
DEPARTAMENTO DE CORRESPONDENCIA

## MEMORANDO

**Para:** Consultoría Jurídica
Dra. María Cazorla / Copia Dra. Esther Gauthier

**De:** Dirección General de Concesiones Mineras
Dra. Laura Paredes

**Asunto:** Respuesta a su Memorandum No. CJ-114-2.007

**Fecha:** 30 de marzo de 2.007

Tengo a bien dirigirme a usted, con motivo de su Memorandum No. CJ-114-2007, de fecha 13 de marzo de 2.007, relacionado con el Recurso decidido mediante **Providencia Administrativa No 003** de fecha 2 de diciembre de 2.003, emitida por el extinto Ministerio de Energía y Minas, con la cual se declara procedente la declaratoria de **Rescate Anticipado** por causas de utilidad publica de las concesiones de explotacion de oro y diamante denominadas: ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, y DELTA D, pertenecientes a las empresas Minera Bajo Caroni, C.A. **(CAROMIN C.A.)** y V.M.C. Mining Company, C.A. respectivamente.

Antes de proceder en los pronunciamientos de Ley, debo advertir que conforme a los señalado en su Memorandum CJ-114-2007, en el último párrafo, "......es importante seguir realizando gestiones para su ubicación a los efectos de su remisión a los órganos competentes para su consideración en caso de ser pertinente". Esta Dirección General remitió Oficio al Ministerio de Finanzas No. DGCM 021 2007 de fecha 22 de marzo de 2.007, a los fines de solicitarles nos sea remitida una copia simple del expediente administrativo de la Compañía Minera del Bajo Caroni, C.A., en virtud de tener constancia conforme Oficio No. CJ/E/DLF/2005/00780-501 de fecha 17 de Agosto de 2.005, de que las copias certificadas del expediente administrativo No. 2084 fueran remitidas a la Consultoría Jurídica de ese Ministerio, obteniendo la siguiente respuesta conforme Oficio No. CJ/E/DLF/2007/0411-206 "Al respecto cumplo con informarle que a través del Oficio No. CJ/E/DLF/2005/00780-502

*de fecha 17 de agosto de 2.005 (anexo copia) esta Consultoría Jurídica remitió el expediente administrativo en comento a la Directora General de Concesiones Mineras para la época, ciudadana MECCYS FUENTES TRANQUINYS, por cuanto la remisión a este Ministerio de dicho expediente se efectuó por <u>error involuntario</u>, toda vez que el caso escapa de las competencias propias de este Ente Ministerial, siendo que ese Ministerio del Poder Popular para las Industrias Básicas y Minería es el competente por ejercer el carácter de autoridad rectora en todo lo concerniente a la actividad minera".*

Así las cosas, se procedió en comunicarnos con la empresa Minera Bajo Caroni, C.A. (**CAROMIN C.A.**) para solicitarles las actuaciones del ya tantas veces comentado expediente administrativo, con lo cual se obtuvo copia que consignara el ciudadano Luis Andrés Guerrero Rosales, en su carácter de apoderado judicial, la cual se anexa, para mayor abundamiento del caso.

**ANTECEDENTES:**

Por cuanto, en fecha 07 de septiembre de 2004, se recibió Oficio No. CJ 710LF/E/2004/741-637, emanado de la Consultoría Jurídica del Ministerio de Finanzas, mediante solicitan información sobre las concesiones denominadas Alfa 1, Alfa 2 y Alfa 3, ubicadas en jurisdicción del estado Bolívar, con motivo de la declaratoria de rescate anticipado realizada en fecha 02 de diciembre de 2003.

Por cuanto, en fechas 24 de mayo de 2005, 17 de noviembre de 2006 y 10 de enero de 2007 el representante legal y el apoderado judicial de la Compañía Minera del Caroní, (CAROMIN, C.A.), titular de las concesiones Alfa 1, Alfa 2 y Alfa 3, solicita a esta Dirección General cumpla con los pasos internos correspondientes a fin de que reenvie el expediente referido a las concesiones mineras antes identificadas, al Ministerio de Finanzas y a la Oficina Nacional del Tesoro con la correspondiente orden de pago, para que sea cancelada a su representada la indemnización integral derivada de la declaratoria del rescate anticipado.

**OBSERVACIONES**

Ahora bien, revisados y analizados los antecedentes del presente caso, esta Dirección General de Concesiones Mineras, observa:

1) Que en fecha 03 de noviembre de 2003, el representante legal de las sociedades mercantiles V.M.C Mining Company, C.A. y Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), solicitó por ante la Dirección General de Minas del Ministerio de Energía y Minas (hoy Ministerio de Industrias Básicas y Minería MIBAM), la revisión del contenido de la Providencia Administrativa No. 001 de fecha 07 de marzo de 2003, en virtud de que al momento de su emisión no fueron tomados en consideración elementos de prueba fundamentales para la tramitación del procedimiento administrativo.

2) Que el 02 de diciembre del mismo año fue dictada la Providencia Administrativa No. 003, mediante la cual la Dirección General de Minas del extinto Ministerio de Energía y Minas, decidió luego de una revisión de los expedientes administrativos correspondientes, que:

> "1.- Atendiendo a los principios de economía, eficacia y celeridad consagrados en la Constitución de la República Bolivariana de Venezuela en su artículo 141, se acuerda la **ACUMULACIÓN** de la documentación concerniente al procedimiento administrativo referido a los expedientes signados con los Nos. 6102, 6103, 6104, 6105, 2084, 2085 y 2086, en carpeta separada, a los fines de evitar que sean dictadas decisiones contradictorias de acuerdo a lo previsto en los artículos 30 y 52 de la Ley Orgánica de Procedimientos Administrativos; en consecuencia, para el mejor conocimiento del asunto, se acuerda aperturar una carpeta separada contentiva de la documentación concerniente al procedimiento administrativo que aquí se sustancia. Déseie foliatura conservando el orden cronológico de las actuaciones conforme a lo previsto en el artículo 34 ejusdem.
>
> 2.- **ADMITE** el escrito presentado en todo a lo que se refiere a la sociedad mercantil V.M.C Mining Company, C.A., por poseer la cualidad necesaria para intervenir en el presente procedimiento administrativo, en razón de que el contrato de cesión de derechos ha surtido sus efectos legales, siendo reconocida su eficacia jurídica por los Tribunales de la República; en consecuencia, se modifica la Providencia Administrativa No.001 de fecha 07 de mayo de 2003 en cuanto a la inadmisibilidad de la pretensión aludida.

> 3.- Se declara **PROCEDENTE** la declaratoria del rescate anticipado por causas de utilidad pública de las concesiones de explotación de oro y diamantes denominadas ALFA 1, ALFA 2 ALFA 3, DELTA A, DELTA B, DELTA C y DELTA D, pertenecientes a las empresas Compañia Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) y V.M.C Mining Company, C.A, respectivamente, con fundamento en los articulos 1º de la Ley de Minas, 4, 53 y 61 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones.
>
> 4.- En cuanto a la solicitud de la declaratoria de interrupción del lapso de duración de las concesiones, se declara **IMPROCEDENTE** por las razones expuestas en la parte motiva de esta decisión."

3) Que el precitado acto administrativo fue notificado a la parte interesada y, posteriormente, se elaboraron y suscribieron dos (2) ejemplares del Pliego de Condiciones, según lo previsto en el articulo 53 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones y en el punto 3 de la parte dispositiva de la Providencia Administrativa No. 003, donde se fijaron las condiciones para la elaboración del proceso de indemnización integral, asi como, forma de pago, nombramiento del perito avaluador, y conforme a lo establecido en el articulo 61 de la precitada ley, se contempló el carácter definitivo del avalúo.

4) Que en fecha 29 de junio de 2004, se recibió en el despacho del Ministro de Finanzas, original del Oficio No. DTM-124, de fecha 14 de mayo de 2004, emanado del Jefe de la División de Tramitaciones Mineras del extinto Ministerio de Energía y Minas, mediante el cual remite a ese Despacho el original del expediente administrativo relacionado con el referido rescate anticipado.

5) Que en fecha 26 de diciembre de 2006 mediante Memorando No. 518, esta Dirección General de Concesiones Mineras recomendó que se ordenara el pago por ante la Oficina Nacional del Tesoro a la empresa Compañia Minera del Bajo Caroní, C.A. (CAROMIN), por concepto de la indemnización integral que le corresponde en atención al rescate anticipado de las concesiones mineras distinguidas como Alfa 1, Alfa 2 y Alfa 3.

En base a las motivaciones anteriormente expuestas, el acto administrativo contenido en la Providencia Administrativa No. 003 de fecha 02 de diciembre de 2003 y los actos derivados del mismo; son actos constitutivos y declarativos, de efectos particulares; por lo tanto, generadores de derechos subjetivos a favor del destinatario del acto, es decir han causado estado, y como tal son cosa juzgada administrativa consagrada en el artículo 49, numeral 7 del texto constitucional, e igualmente, se mantiene vigente la procedencia del pago de la indemnización integral contemplado en el Pliego de Condiciones suscrito en fecha 17 de diciembre de 2003.

En consecuencia, el avalúo contentivo del monto de la indemnización integral no puede ser modificado, revisado o alterado por ninguna autoridad, en virtud del carácter definitivo que le atribuye el artículo 61 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, así como también, la Cláusula Cuarta del Pliego de Condiciones., razón por la cual no consideramos su recomendación en cuanto a realizar una verificación o constatación de los extremos técnicos, formulas de calculo y demás datos observados en el citado informe levantado por ABECIR, y mucho menos realizarlos por parte de los técnicos especializados que laboran en esta Dirección General de Concesiones Mineras, en virtud de no contar con tal personal. Por otra parte se observa en la pagina 26 del cuaderno de fotocopias simples remitidos a ese Órgano Consultor que la empresa ABECIR soporto su Informe para la evaluación bajo los siguientes tenores: *"Para lograr los alcances necesarios y apropiados en la cuantificación y evaluación de los recursos mineros de las Concesiones ALFAS ha sido necesario revisar toda la data histórica referente a las concesiones, todos los estudios técnicos realizados que contienen análisis físico-químico y metalúrgicos, los proyectos mineros en operación y planificados; proyecciones económicas y en fin, toda la data relevante y pertinente."*
Con esta observación, esta claro que esta Dirección General carece de la metodología con la cual cuenta una empresa evaluadora para pronunciarse y lograr tales alcances.

> Ahora bien, no obstante lo anteriormente expuesto, <u>cabe destacar que esa potestad de revocar sus actos encuentra limitaciones cuando se trata de actos administrativos de efectos particulares que hayan causado derechos subjetivos o intereses legítimos, personales y directos; en razón de ello, queda expresamente prohibida por el legislador la revocatoria de actos administrativos que creen derechos subjetivos</u>. En este sentido, el numeral 2 del artículo 19 de la referida Ley Orgánica de Procedimientos Administrativos, sanciona con la nulidad absoluta los actos *"que resuelvan un caso precedentemente decidido con carácter de definitivo y que haya creado derechos particulares, salvo autorización expresa de la ley"*.
>
> De lo antes expuesto, se infiere conforme lo ha interpretado la jurisprudencia de este Máximo Tribunal, <u>la inmutabilidad de los actos administrativos que originen derechos a favor de los particulares, cuando han quedado firmes</u> (...)" (Subrayado y negrillas mías)

Por otra parte, pasa esta Dirección General de Concesiones Mineras a pronunciarse sobre la naturaleza jurídica de la indemnización integral a que hace referencia el Pliego de Condiciones de fecha 17/12/2.003.

Pues bien, la Cláusula Cuarta del Pliego de Condiciones estableció el carácter definitivo del monto indemnizatorio que arrojaría el avalúo, por lo que la acreencia producto del peritaje se hizo **líquida** cuando el perito fijó el monto cierto de la indemnización integral, es decir, el monto de la indemnización está determinado de manera precisa e inequívoca; y a su vez, se hizo **exigible**, al momento que el perito avaluador designado por las partes hizo entrega del avalúo, porque el pago oportuno no está condicionado a un acto posterior, de conformidad a lo previsto en el artículo 1.212 del Código Civil Venezolano.

En ese sentido, se ha pronunciado el Juzgado Cuarto de Primera Instancia en lo Civil, Mercantil y del Tránsito de la Circunscripción Judicial del Estado Lara, en fecha 19 de junio del 2.006, al señalar que:

> "(...) Conforme a lo expuesto con anterioridad, la pretensión del demandado debe perseguir el pago de una suma líquida y exigible en dinero o la entrega de cantidad cierta de cosas fungibles o una cosa determinada. Ello significa que el procedimiento por intimación, no sólo es procedente cuando se trate de acciones de condena en las cuales se persigue el cumplimiento de una obligación de DAR que conste en prueba

> Instrumental. **La obligación debe ser líquida y exigible es decir, que el quantum esté determinado o pueda serlo mediante una simple operación aritmética, y además que no esté sujeta a condición, plazo o contraprestación alguna.**
> **Además** de tales condiciones de liquidez y exigibilidad, es **preciso que el crédito sea cierto,** lo cual significa que no podría usarse el procedimiento por intimación si la pretensión del actor no existe de manera irrefutable (...)". (Resaltado y Negrillas mías).

Aunado a lo anterior, consta en autos que en fecha cierta 17 de agosto de 2005, la Consultora Jurídica del Ministerio de Finanzas, mediante comunicación No CJ/E/DLF/2005/00780-502 dirigida a la entonces Directora de Concesiones Mineras, Meccys Fuentes Tranquinys, hizo *remisión del expediente relacionado con el pago de la indemnización integral acordada a favor de la empresa CAROMIN C.A., según Providencia Administrativa No 003 de fecha 02 de diciembre de 2003, emanada de la Dirección General de Minas del antiguo Ministerio de Energía y Minas.* Resulta entonces obvio que la acreencia que nos ocupa no fue incluida en el ejercicio financiero de 2004 por el Ministerio de Energía y Minas.

Asimismo, esta Dirección General de Concesiones Mineras ha podido constatar que la acreencia en cuestión tampoco ha sido incluida en los ejercicios económicos de 2005 y 2006, correspondientes al Ministerio de Industrias Básicas y Minería.

Visto lo anterior, es obvio concluir, que la Indemnización Integral a que se hace referencia a lo largo de todo este proceso, es catalogada como una **acreencia y líquida y exigible** y sería un ejercicio temerario de la Administración el tratar de catalogarla de otra manera.

## PRONUNCIAMIENTO

En cuanto a las facultades legales que tiene este Despacho para emitir un pronunciamiento, la Consultoría Jurídica de este Ministerio constató que dentro de la estructura organizativa del Ministerio de Industrias Básicas y Minería, el

órgano competente para sustanciar y decidir el presente caso es la Dirección General de Concesiones Mineras.

Pues bien, esta Dirección General de Concesiones Mineras advierte que la noción del Estado de Derecho es la sujeción de los órganos públicos a sus propias disposiciones; es por ello, que la Administración Pública está obligada a respetar y cumplir los acuerdos alcanzados, ya que de lo contrario, se atentaría contra la estabilidad de la convivencia social.

Por lo tanto, y siendo que esta Dirección General de Concesiones Mineras ha podido verificar que todos los actos ocurridos con posterioridad a la Providencia Administrativa de fecha 02/12/2.003, dictada por la Dirección General de Minas (del extinto Ministerio de Energía y Minas), signada con el número 003, se han realizado en ejecución de dicha providencia administrativa, según lo dispuesto en los artículos 4, 53 y 61 de la Ley Orgánica sobre Promoción de la Inversión Privada bajo el Régimen de Concesiones, se evidencia que se debe tramitar la documentación pertinente y emitir la orden de pago por ante la Oficina Nacional del Tesoro por la cantidad de Sesenta y Cinco Millones Setecientos Cincuenta y Tres Mil Doscientos Setenta y Tres Dólares de los Estados Unidos de América (US$ 65.753.273,00) a la empresa Compañía Minera del Bajo Caroní, C.A. (CAROMIN) por concepto de la **INDEMNIZACION INTEGRAL** que le corresponde en atención al rescate anticipado de las concesiones mineras distinguidas como **ALFA 1, ALFA 2 y ALFA 3**, ya que el retardo en la gestión administrativa del asunto aquí estudiado pudiera acarrear daños y perjuicios innecesarios a la República.

Quedan así expuestas las consideraciones del asunto sometido, todo de conformidad con las atribuciones consagradas en el Reglamento Orgánico de este Ministerio, en su artículo 22 numerales 4 y 7. Quedo a su disposición para cualquier ampliación o aclaratoria relacionada con el presente caso.

Atentamente,

LAURA PAREDES

RECIBIDO
REPUBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE INDUSTRIAS BÁSICAS Y MINERÍA
3 0 MAR. 2007
RECIBIDO POR: [signature]
HORA: 4:22 pm
DEPARTAMENTO DE CORRESPONDENCIA

Anexos:

- Copia del Oficio No. DGCM 021 2.007 dirigido al Ministerio del Poder Popular para las Finanzas Atnc. Lic. Eduardo Labrador
- Copia del Oficio No. CJ/E/DLF/2007/0411-206 de fecha 27 de marzo, remitido al Ministerio del Poder Popular para las Industrias Básicas y Minería- Dra. Laura Paredes
- Copia del Oficio No. CJ/E/DLF/2005/00780-502 de fecha 17 de agosto de 2.005, remitido por el Ministerio de Finanzas a la ciudadana Meccys Fuentes Tranquiniys.
- Copia del Oficio No. CJ/E/DLF/2005/00781-501 de fecha 17 de agosto de 2.005, remitido al ciudadano Manuel Alfredo Fernández Gonzalo.
- Una comunicación de fecha 30 de marzo de 2.007, dirigida a la Dirección General de Concesiones Mineras-Dra. Laura Paredes, conjuntamente con una carpeta contentiva de copias simples de documentos que forman parte del expediente administrativo de la empresa "Compañia Minera del Bajo Caroni (CAROMIN)

[Letterhead:]
**Bolivarian** Government | Ministry of
of Venezuela | Basic Industries and Mining

[Date stamp:]

**RECEIVED**
BOLIVARIAN REPUBLIC OF VENEZUELA
MINISTRY OF BASIC INDUSTRIES AND MINES

**30 MAR 2007**

RECEIVED BY: Juan Reyes
TIME        : 4:22 PM
CORRESPONDENCE DEPARTMENT

**For:**    **Legal Department**

Dr. María Cazorla / *Copy Dr. Esther Gauthier*

**From:**   **Office of the Director General of Mining Concessions**

Dr. Laura Paredes

**Re.:**    **Answer to your Memorandum No. CJ-114-2007**

**Date:**   **March 30, 2007**

I am pleased to address myself to you on occasion of your Memorandum No. **CJ-114-2007**, dated March 13, 2007, related to the Petition decided by **Administrative Order No. 003** of December 2, 2003, issued by the extinct Ministry of Energy and Mines whereby the **Early Redemption** on the grounds of public interest of the gold and diamond exploitation concessions known as ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, and DELTA D, belonging to the companies Minera Bajo Caroní, C.A. (**CAROMIN C.A.**) and V.M.C. Mining Company, C.A., respectively, was declared to be proper.

Before proceeding to the legal pronouncements, I must note that, according to the statement made in the last paragraph of your Memorandum CJ-114-2007, *"... it is important to continue making efforts to locate it in order that it may be forwarded to the competent bodies for their consideration if pertinent."* This Office of the Director General sent Official Communication No. DGCM 021 2007, dated March 22, 2007, to the Ministry of Finances to ask them that a simple copy of the administrative file for

Compañía Minera del Bajo Caroní, C.A., be sent to us, as there is a record under Official Communication No. CJ/E/DLF/2005/00780-501, dated August 17, 2007, that certified copies of administrative file No. 2084 were sent to that ministry's legal department, the following response having been obtained according to Official Communication No. CJ/E/DLF/2007/0411-206: *"With respect to [sic.] dated August 17, 2005, (copy attached), this Legal Department forwarded the administrative file under discussion to the then Director General of Mining Concessions, Ms. MECCYS FUENTES TRANQUINYS, as said file had been sent to this ministry as the result of an <u>involuntary error</u>, inasmuch as the case is beyond the competence of this ministerial entity and the Popular Power Ministry for Basic Industries and Mining is the competent one as it is the governing authority in all matters related to mining activities."*

At this point, we proceeded to contact the company Minera del Bajo Caroní, C.A. (**CAROMIN C.A.**) to ask them for the proceedings in the oft-mentioned administrative file, and thus obtained a copy filed by Mr. Luis Andrés Guerrero Rosales in his capacity as judicial attorney-in-fact, which is attached hereto to provide more information on the case.

**BACKGROUND:**

Whereas on September 4, 2004, Official Communication No. CJ 710/LF/E/2004/741-637, issued by the Legal Department of the Ministry of Finances, was received, requesting information on the concessions known as Alfa 1, Alfa 2, and Alfa 3, located within the jurisdiction of the State of Bolívar, as a result of the declaration of early redemption made on December 2, 2003.

Whereas on May 24, 2005, November 17, 2006, and January 10, 2007, the legal representative and judicial attorney-in-fact of Compañía Minera del Caroní (CAROMIN, C.A.), the holder of the Alfa 1, Alfa 2, and Alfa 3 concessions, requested that this Office of the Director General take the internal steps necessary in order to resend the file in connection with the previously identified mining concessions to the Ministry of Finances

2

and the National Treasury with the respective payment order, so that the full indemnity arising out of the declaration of early redemption may be paid to his constituent.

**OBSERVATIONS**

Now, then, having reviewed and analyzed the background of the present case, this Office of the Director General of Mining Concessions observes:

1)   That on November 3, 2003, the legal representative of the mercantile corporations V.M.C. Mining Company, C.A., and Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.) requested from the Office of the Director General of Mines of the Ministry of Energy and Mines (the present Ministry of Basic Industries and Mining, MIBAM) to revise the contents of Administrative Order No. 001 dated March 7, 2003, since, at the time it was issued, items of evidence essential for the processing of the administrative proceeding were not taken into consideration.

2)   That on December 2 of that same year, Administrative Order No. 003 was issued whereby the Office of the Director General of Mines of the extinct Ministry of Energy and Mines, after a review of the appropriate administrative files, decided that:

> "1.   In furtherance of the principles of economy, efficacy, and celerity enshrined in Article 141 of the constitution of the Bolivarian Republic of Venezuela, it is decided to **CONSOLIDATE** the documentation pertaining to the administrative proceeding dealing with the files bearing numbers 6102, 6103, 6104, 6105, 2084, 2085, and 2086, in a separate binder, in order to prevent contradictory decisions from being issued, pursuant to the provisions of Articles 30 and 52 of the Law Organizing Administrative Proceedings; consequently, and in order that the matter may be better heard, it is resolved to open a separate binder containing the documentation pertaining to the administrative proceeding being discussed here. Let its pages be numbered maintaining the chronological order of the proceedings, as contemplated in Article 34 *eiusdem*.
>
> 2.   It **ADMITS** the pleading that was filed to the extent that it refers to the mercantile corporation V.M.C. Mining Company, C.A., inasmuch as it has the standing necessary to intervene in the present administrative proceeding, as the agreement of assignment of rights has had legal effect, its legal efficacy having

3

been acknowledged by the courts of the republic; consequently, Administrative Resolution No. 001 of May 7, 2003, is modified as to the inadmissibility of the claim in question.

3. The accelerated redemption on the grounds of public usefulness of the concessions for the exploitation of gold and diamonds known as ALFA 1, ALFA 2, ALFA 3, DELTA A, DELTA B, DELTA C, and DELTA D, belonging to the companies Compañía Minera del Bajo Caroní, C.A. (CAROMIN, C.A.), and V.M.C. Mining Company, C.A., respectively, is declared to be **PROPER**, based on Article 1 of the Mining Act, and Articles 4, 5, and 61 of the Law Organizing the Promotion of Private Investment Through Concessions.

4. As regards the request to declare interrupted the term of duration of the concessions, it is **DENIED** on the grounds set forth elsewhere in this decision."

3) That the aforesaid administrative proceeding was notified to the party concerned and, subsequently, two (2) copies of the General Conditions were prepared and signed, as contemplated in Article 53 of the Organic Law on the Promotion of Private Investment through Concessions and in point 3 of the provisions of Administrative Order No. 003, where the conditions were set for the preparation of the full indemnity process as well as the manner of payment, the appointment of the expert appraiser, and, pursuant to what is established in Article 61 of the aforementioned law, the final nature of the assessment was contemplated.

4) That on June 29, 2004, the original of Official Communication No. DTM-124, dated May 14, 2004, issued by the Head of the Mining Processing Division of the extinct Ministry of Energy and Mines was received at the office of the Minister of Finances, forwarding to said office the original of the administrative file related to the aforesaid early redemption.

5) That on December 26, 2006, through Memorandum No. 518, this Office of the Director General of Mining Concessions recommended that payment to Compañía Minera del Bajo Caronía, C.A. (CAROMIN) be ordered by the National Treasury for the full indemnity to which it is entitled as the result of the early redemption of the concessions
…

4

On the basis of the previous reasons, the administrative proceeding contained in Administrative Order No. 003 dated December 2, 2003, as well as the acts arising therefrom are constitutive and declarative acts, with particular effects, and, therefore, they generate subjective rights in favor of the recipient of the act, *i.e.*, they have created a status and, as such, they are administrative *res iudicata*, enshrined in Article 49, paragraph 7, of the constitutional text, and, likewise, the legal basis for the payment of the full indemnity contemplated in the General Conditions signed on December 17, 2003, remains in effect.

Consequently, the appraisal containing the amount of the full indemnity may not be modified, revised or altered by any authority by virtue of the final nature attributed to it by Article 61 of the Organic Law on the Promotion of Private Investment through Concessions, and by Clause Four of the General Conditions, this being the reason why we did not consider your recommendation to verify or ascertain the technical data, calculation formulas, and all other information contained in the aforesaid report prepared by ABECIR, and, even less, to have the specialized technicians working at the Office of the Director General of Mining Concessions make them, as we do not have such personnel. On the other hand, it is observed on page 26 of the book of simple photocopies sent to that consulting body that ABECIR supported its evaluation report with the following statements: *"To attain the necessary and appropriate scope for the quantification and appraisal of the ALFA Concessions' mining resources it has been necessary to review all of the historic data related to the concessions, all the technical studies conducted that contain physical, chemical, and metallurgical analyses, the mining projects in operation and those being planned, financial projections, and, in general, all relevant and pertinent data."* With this observation, it is clear that this Office of the Director General lacks the methodology available to an appraisal company to issue an opinion and attain that scope.

> Now, then, in spite of what has been set forth above, <u>it should be underscored that this power to revoke its acts does run into limitations in the case of administrative acts with particular effects that have given rise to subjective rights or legitimate, personal, and direct interests; for this reason, the</u>

5

**lawgiver expressly forbids the revocation of administrative acts which create subjective rights.** In this regard, paragraph 2 of Article 19 of the aforementioned Administrative Proceedings Organic Law, establishes the absolute nullity of acts *"resolving any case previously decided on a final basis and which created particular rights, unless expressly authorized by law."*

From the foregoing, and as interpreted by the jurisprudence of this Highest Court, **the immutability of administrative acts giving rise to rights in favor of private persons, once said rights become final,** is inferred ..." (My underlining and bold face).

On the other hand, this Office of the Director General of Mining Concessions will now address the legal nature of the full indemnity referred to in the General Conditions dated 17/12/2003.

Well, then, Clause Four of the General Conditions established the final nature of the amount of the indemnity that would result from the appraisal and, therefore, the amount of the obligation resulting from the expert appraisal became **due** when the expert established the amount certain of the full indemnity, *i.e.*, the amount of the indemnity has been precisely and unequivocally determined; and, in turn, it became **payable** on the moment the expert appraiser delivered the appraisal, for, under Article 1212 of the Venezuelan Civil Code, timely payment is not contingent upon a subsequent act.

The Fourth Civil, Mercantile, and Traffic Trial Court of the Judicial Circuit for the State of Lara has addressed this issue on June 19, 2006, when it pointed out that:

> "... As previously set forth, the defendant's claim should seek payment of a sum of money due and payable or the delivery of an amount certain of fungible things, or a specific thing. This means that a demand for payment is not only proper in the case of prosecutions where [text cut off at this point in the original Spanish document]. **The obligation must be due and payable, *i.e.*, the *quantum* must be determined or can be determined through a simple arithmetic operation, and, besides, it must not be subject to any condition, term, or consideration.**
>
> In addition to such conditions of being due and payable, it is necessary that the loan be certain, which means that a demand for payment may not be used if the plaintiff's claim is not irrefutable ..." (My highlighting and bold face).

6

In addition to the foregoing, it is reflected on the record that on a date certain, August 17, 2005, Legal Counsel for the Ministry of Finances, through communication No. CJ/E/DLF/2005/00780-502, addressed to the then Director of Mining Concessions, Meccys Fuentes Tranquinys, *forwarded the file related to the payment of full indemnity agreed upon in favor of the company CAROMIN C.A., under Administrative Order No. 003, dated December 2, 2003, issued by the Office of the Director General of Mines of the former Ministry of Energy and Mines*. It is obvious, then, that the obligation in question was not included in the 2004 fiscal year by the Ministry of Energy and Mines.

Likewise, this Office of the Director General of Mining Concessions has been able to ascertain that the obligation in question has not been included either in the 2005 and 2006 fiscal years of the Ministry of Basic Industries and Mines.

Having seen the foregoing, the obvious conclusion is that the full indemnity being referred to throughout this entire process is catalogued as an **obligation, due and payable**, and that it would be a reckless exercise on the part of the Administration to attempt to catalogue it otherwise.

**PRONOUNCEMENT**

As for the legal power this Office has to issue a pronouncement, this Ministry's Legal Department ascertained that, within the organizational framework of the Ministry of Basic Industries and Mines, the Office of the Director General of Mining Concessions is the body competent to substantiate and decide the present case.

Well, then, this Office of the Director General of Mining Concessions notes that the very notion of the rule of law is that public entities be subject to their own decisions; that is why the Public Administration is obliged to respect and perform the agreements that have been reached, for to do otherwise would be to attempt against the stability of social coexistence.

7

Therefore, and inasmuch as this Office of the Director General of Mining Concessions has been able to ascertain that all acts which occurred subsequently to the Administrative Order dated 2/12/2003, issued by the Office of the Director General of Mines (of the extinct Ministry of Energy and Mines), and bearing number 003, have been conducted in execution of said administrative order, as provided in Articles 4, 53, and 61 of the Organic Law on the Promotion of Private Investment through Concessions, it is evident that the pertinent documentation must be processed and a payment order issued by the National Treasury in the amount of sixty-five million seven hundred fifty-three thousand two hundred and seventy-three dollars of the United States of America (US $65,753,273.00) to Compañía Minera del Bajo Caroní, C.A. (CAROMIN) as the **FULL INDEMNITY** to which it is entitled as the result of the early redemption of the mining concessions known as **ALFA 1, ALFA 2, and ALFA 3**, for a delay in the administrative processing of the present matter could generate unnecessary damages for the republic.

The considerations of the matter under study have therefore been set forth pursuant to the powers enshrined in Article 22, paragraphs 1 and 7, of this Ministry's Organic Rules and Regulations. I remain at your disposal for any enhancement or clarification related to the present case.

                        Sincerely,

                        [Illegible signature]

[There is a partially legible seal of the Ministry of Basic Industries and Mining of the Bolivarian Republic of Venezuela]

[Date stamp:]

**RECEIVED**
BOLIVARIAN REPUBLIC OF VENEZUELA
MINISTRY OF BASIC INDUSTRIES AND MINES

**30 MAR 2007**

RECEIVED BY: Juan Reyes
TIME             : 4:22 PM

8

Exhibits:

* Copy of Official Communication No. DGCM 021 2007 addressed to the Popular Power Ministry of Finances, attn. Eduardo Labrador, Esq.
* Copy of Official Communication No. CJ/E/DLF/2007/0411-206 dated March 27, sent to the Popular Power Ministry of Basic Industries and Mining - Dr. Laura Paredes
* Copy of Official Communication No. CJ/E/DLF/2005/00780-502 dated August 17, 2005, sent by the Ministry of Finances to Ms. Meccys Fuentes Tranquinys.
* Copy of Official Communication No. CJ/E/DLF/2005/00781-501, dated August 17, 2005, sent to Mr. Manuel Alfredo Fernández Gonzalo.
* A communication dated March 30, 2007, addressed to the Office of the Director General of Mining Concessions - Dr. Laura Paredes, together with a folder containing simple copies of documents that are part of the administrative file of Compañía Minera del Bajo Caroní (CAROMIN).

9

**LOPEZ AND DURAN**
**Interpreting and Translating**
420 South Dixie Highway, Suite 2L
Coral Gables, Florida 33146
Tele: (305)461-4699 * Fax: (305)461-4799

CERTIFICATE OF ACCURACY

STATE OF FLORIDA )
                 ) SS.
COUNTY OF DADE   )

Before me, a notary public in and for the State of Florida at large, appears Nelson Duran, Ph.D., who is personally known to me, a certified court interpreter, qualified by the Administrative office of the United States Courts, for and on behalf of Lopez and Duran Interpreting and Translating, who, after being duly sworn, deposes and says that he is fully versed in the Spanish and the English languages, and that the aforegoing is a true and correct translation of the attached document consisting of ____nine____ pages, and that this is the last of the attached.

_____
Nelson Duran, Ph.D.

Sworn to and subscribed this __10th__ day of __October__, 200_7_.

_____
MARLEN ABASCAL
Notary Public,
State of Florida at Large

My commission expires:



MARLEN ABASCAL
MY COMMISSION # DD 342829
EXPIRES: August 2, 2008
Bonded Thru Notary Public Underwriters

The utmost care has been taken to ensure the accuracy of all translations. Lopez and Duran Interpreting and Translating and its employees shall not be liable for any damages due to negligence or error in typing or translation.