# EXHIBIT J

# Greenberg
# Traurig

James W. Perkins
Tel. (212) 801-3188
Fax (212) 801-6400
perkinsj@gtlaw.com

August 10, 2007

**VIA HAND DELIVERY**

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, New York

> Re: *Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venezuela,*
> Case No.: 07 CV 3179

Dear Judge Buchwald:

We are counsel to Plaintiffs herein, and in response to Defendants' Motion to Dismiss the instant action, we write pursuant to the Court's individual rule concerning motions practice. As Defendants themselves note in their cover letter to Your Honor, they have filed their Motion without the prior notification and pre-motion conference required by the Court's Rules. In submitting this response, we respectfully concur with the suggestion made by Defendants that a scheduling conference be convened at the Court's earliest convenience. Plaintiff's intended Opposition to the Motion is outlined below.

Plaintiffs allege that Defendants, the Government of Venezuela and its Ministry of Mines, confiscated their property, and refused (and still refuse) to pay compensation as prescribed by Venezuelan law. They also allege that, in the course of negotiation over the terms of what was essentially the exercise of eminent domain, the Venezuelan Minister in charge of the matter voluntarily, deliberately, and in exchange for valuable benefits agreed to vest this Court with jurisdiction over any action required to enforce the payment obligation. Plaintiffs contend that this willing acceptance of jurisdiction constitutes an express waiver of sovereign immunity, within 28 U.S.C. § 1605(a)(1).

The Minister, Rafael Ramirez Carreño, signed the document ("the Addendum") which is attached to the Complaint as Exhibit 3, and had a copy delivered to Plaintiffs through normal Ministry channels. Despite his denial, Plaintiffs represent to the Court that they do, in fact, have evidence that the Minister signed the Addendum waiving immunity, and that he did so within his authority and for good and persuasive reasons. Moreover, they have evidence that the affidavits and other materials submitted by Defendants in support of their Motion to Dismiss are at best misleading, and in some instances simply false.

Hon. Naomi Reice Buchwald
August 10, 2007
Page 2

---

Plaintiffs certainly acknowledge that this action is governed by the Foreign Sovereign Immunities Act ("FSIA"), and that Defendants (in one case a state, in the other an agency or instrumentality of that state) are entitled to immunity unless Plaintiffs can persuade the Court that an exception applies. Plaintiffs have what the Second Circuit described, in *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993), "the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." In the end, however, the Court concluded, "the ultimate burden of persuasion [regarding immunity] remains with the alleged foreign sovereign." *Id*; *see also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001).

Defendants argue first, as matter of fact, that Minister Ramirez **did not sign** the document. They go on to submit that he **could not have signed** it, because various universally-observed office procedures were not followed. And finally they contend that he **would not have signed** it, since to do so would have been inconsistent with fundamental policies and political positions of the Government.

Plaintiffs are prepared to show that all three of these propositions are simply wrong. Indeed, Minister Ramirez did sign the paper, although he has every incentive, and may have left himself every opportunity, to deny it. Defendants work themselves, in their moving papers, into a high dudgeon, pointing with outrage to an alleged plot and a scheme to defraud them through an audacious act of forgery.

This is nothing but empty posturing. What is going on here is indeed a plot, as Defendants allege, but the plot is being perpetrated by the Government of President Hugo Chavez to undermine the rule of law, to deny accountability, and to avoid just payment for valuable assets taken ostensibly for a public purpose, all in violation of both international law and applicable Venezuelan domestic law. The parties agreed to nominate this Court to be the ultimate defender of that law, but the Chavez Government now denies the existence of that agreement.

First, the signature on the Addendum is Minister Ramirez's. Plaintiffs will present the testimony of a handwriting expert who will so attest, comparing the Addendum with other exemplars of the Minister's signature. Defendants make much of the fact that Plaintiffs cannot produce the original of the document, and challenge them to come forward with it. The simple answer -- which Plaintiffs will demonstrate through testimony -- is that the original Addendum was retained in the files of the Ministry of Mines. Indeed, it is at least

Hon. Naomi Reice Buchwald
August 10, 2007
Page 3

---

counterintuitive that a Government agency would release the original of such a document, keeping only a copy for itself.[1]

A handwriting expert can do only so much with a copy. He can, however, (and here will) conclude that the writing is undeniably that of a particular person. He cannot attest to how the signature came to be on the document. In his statement, however, Minister Ramirez goes further. He does not simply deny that he signed the Addendum: he says that the signature is not his.[2] That statement is false, and Plaintiffs will prove it.

Plaintiffs will similarly contradict, through sworn testimony, the denial by Francisco Salas Blanco that he ever saw the Addendum or anything similar to it. In fact, Manuel Fernandez, legal representative of Plaintiffs, prepared the first draft of what became "the Addendum," and handed it to Director General Salas on December 17, 2003. The final, signed version was the Ministry's response to Mr. Fernandez's proposal, delivered back to him four days later.

Defendants' witnesses Orlando Ortegano and Martha Acosta Garcia attest that the document could not be genuine, because normal office procedures were not followed with respect to it. Plaintiffs will provide testimony that such procedures (concerning transmittal memoranda and the kind of seal used to authenticate signatures) were frequently not observed in the Ministry of Mines during the relevant time period.

Finally, Defendants would have the Court consider it beyond imagination that a Venezuelan Government official would voluntarily surrender jurisdiction over what they call its sovereign actions to the courts of any foreign nation, much less the despised United States. The simple fact is that Venezuela regularly accepted the jurisdiction of U.S. courts in investment-related matters in 2003, and still does so (despite the further deterioration of political relations) to this day. Venezuela is a major investor in U.S. energy companies, and the Minister of Mines is himself President of the company that owns and controls Citgo. Plaintiffs will present to the Court a smorgasbord of documents, including contracts, showing

---

[1] Defendants also protest that the signature on copy of the Addendum attached to the Complaint is virtually illegible. It is true that the copy served on Defendants is very poor. At the request of counsel for Defendants, the undersigned provided a much better copy of the same document to them on June 29, four weeks before they filed their Motion. Indeed, Defendants' discussion of the seal on the document demonstrates that they had the better copy at the time the Affidavits were executed, but they did not so advise the Court. Undersigned counsel nevertheless apologize for having used a poor exemplar in the first instance, and enclose with this letter for the Court's use the best copy in their possession, which Defendants have had for six weeks.

[2] Plaintiffs note that the Minister's letter to the Attorney General submitted as Exhibit 1 to the Motion to Dismiss does not contain the authenticating language required by 28 U.S.C. § 1746 (curiously the other three Exhibits do set out that language). This Court has refused to consider writings produced outside the United States when the submitting party failed to make the required statutory declaration. See, e.g., Sterling Fifth Assocs. v. Carpentile Corp., No. 03 Civ. 6569, 2003 WL 22227960, at *5 (S.D.N.Y. Sept. 26, 2003).

Hon. Naomi Reice Buchwald
August 10, 2007
Page 4

---

voluntary, express waivers of sovereign immunity by the Government of Venezuela, within 28 U.S.C. § 1605(a)(1).

The Minister signed the Addendum for a good reason. Earlier efforts by the Government to nationalize Plaintiffs' mining concessions had been blocked by the courts. It was considered important to get the massive Tocoma HydroElectric Project underway. Plaintiffs, however, would not yield their right to further judicial challenges unless and until they had a solid guarantee that they would receive whatever payment to which they were entitled according to the decision of the independent appraisal expert as prescribed by applicable law. They did not believe that the courts of Venezuela could or would order payment in the event that the Government dragged its feet.[3] So they insisted on the opportunity for enforcement before a tribunal that they knew would be fair and expeditious. Since the Government had regularly accepted the jurisdiction of the courts of New York in other matters, they put forward that proposal, and it was accepted. In exchange, they undertook that they would not initiate additional blocking measures, or otherwise impede the process, in Venezuela.

What is before the Court, at this juncture, is a contest over the authenticity of a document. If it is real, then sovereign immunity is waived; if it is not, then no FSIA exception applies. This is not an unfamiliar matter for courts to have to resolve, and there is a procedure for doing so. It is set out in Rule 901, Federal Rules of Evidence, and in the caselaw interpreting that Rule. Plaintiffs will demonstrate that the Addendum is what it appears to be, and that it bears the "appearance, contents, substance, internal patterns, [and] other distinctive characteristics," such that, taken in the context and circumstances, it is a valid waiver of sovereign immunity by both Defendants. Fed. R. Evid. 901(b)(4).

With the authenticity of the document established, the other defenses raised by Defendants evaporate. The enforcement of a final decree of a foreign government does not implicate the act of state doctrine. *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 689-93 (1976). Personal jurisdiction over Defendants is established by the document itself, in which the defense of *forum non conveniens* is expressly waived.

Plaintiffs respectfully request that this Court proceed along the lines endorsed by the U.S. Court of Appeals for the District of Columbia Circuit in similar circumstances in *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36 (D.C. Cir. 2000). The parties should be directed to prepare for and to conduct before this Court a full evidentiary hearing limited to issues of jurisdiction, which in this case means limited to the issue of the genuineness of the Addendum.

---

[3] Obviously, their concern was well-taken. Even now, before this Court, Defendants do not deny either that they now hold the concessions or that they owe the money: they simply look for excuses for claiming that the obligation to pay it is not enforceable.

Hon. Naomi Reice Buchwald
August 10, 2007
Page 5

---

Plaintiffs urge the Court to accept Defendants' suggestion that briefing in opposition to and in further support of the pending Motion be deferred until a "pre-motion conference" can be convened, and a plan for (limited) discovery, argument, and trial can be established.

Respectfully submitted,

*James W. Perkins*

James W. Perkins
(JWP 6684)

Enclosure

cc: Kenneth S. Leonetti, Esq.
Paul S. Reichler, Esq.
Ronald E.M. Goodman, Esq.
Janis Brennan, Esq.

# EXHIBIT 1

Document1


REPUBLICA BOLIVARIANA DE VENEZUELA
MINISTERIO DE ENERGIA Y MINAS
Despacho del Ministro

# **ADDENDUM**

Por cuanto, en fecha 17 de diciembre de 2003, este Ministerio de Energía y Minas (MEM) por órgano de la Dirección General de Minas ha suscrito el Pliego de Condiciones con el representante legal de las sociedades mercantiles Compañía Minera del Bajo Caroní (CAROMIN), C.A. y V.M.C Mining Company, C.A. (LAS EMPRESAS), a los fines de darle continuidad al procedimiento administrativo de rescate anticipado; por cuanto, el Pliego de Condiciones anteriormente señalado, no estableció las consecuencias de los posibles incumplimientos a los acuerdos en él contenido por ambas partes, por lo tanto, este Ministerio, actuando en nombre y representación de la República Bolivariana de Venezuela, acuerda lo siguiente:



**PRIMERO:** En caso de existir algún incumplimiento por parte de las empresas arriba señaladas, tales como: a) La iniciación de nuevos juicios en contra de la República Bolivariana de Venezuela, el MEM y/o CVG-EDELCA relacionado al rescate anticipado contenido en la Providencia Administrativa No. 003, de fecha 02 de diciembre de 2003. b) No proporcionar al perito avaluador que sea designado los documentos y data de las concesiones mineras Alfa1, Alfa 2, Alfa 3, Delta A, Delta B, Delta C y Delta D. c) No cumplir con las obligaciones asumidas en el Pliego de Condiciones. Se elige como domicilio especial y excluyente, de cualquier otro, a la ciudad de Caracas, a la jurisdicción de cuyos tribunales se someten ambas partes; así como, la legislación y la ley aplicable será la de la República Bolivariana de Venezuela.

**SEGUNDO:** En caso de incumplimiento por parte del MEM, se elige como domicilio especial y excluyente, de cualquier otro, a la ciudad de Nueva York, estado de Nueva York, Estados Unidos de América, a la jurisdicción de los tribunales del estado de Nueva York y se regirá el proceso por la Ley o estatutos que gobiernen a dicho (s) tribunal (es). Se entiende por incumplimiento del MEM, lo siguiente: a) Contravenir el contenido de la Cláusula Quinta del Pliego de Condiciones. b) No proporcionar al perito que sea designado, permiso de acceso al área de las concesiones mineras. La ley aplicable en este caso, será la de Estados Unidos de América. No obstante lo anterior, las parte acuerdan que la empresas tendrán el derecho de intentar la acción de cobro de dinero en cualquier otro tribunal o corte de los Estados Unidos de América, en cuyo caso la aplicación de la Ley será la de el estado donde este ubicado dicho tribunal. Asimismo, las partes acuerdan que las empresas tendrán el derecho de solicitar y ejecutar medidas precautelativas, precautelares, embargo preventivo, secuestros previos al fallo, ejecución de embargo, ejecución del propio fallo en cualquier otro tribunal diferente a los de la ciudad de Nueva York. Por otra parte el MEM acuerda que cualquier medida preventiva de embargo, secuestro o de naturaleza similar decretada por cualquier tribunal podrá ser ejecutada por cualquier otro tribunal de Jurisdicción competente. Por otra parte, el MEM, reconoce que en la celebración del Pliego de Condiciones

así como en este addendum actúa en nombre y representación de la Republica Bolivariana de Venezuela, por lo que las empresas tendrán derecho de ejecutar las medidas aquí mencionadas contra cualquier activo(s), ingreso(s) o propiedad(es) perteneciente(s) a la Republica Bolivariana de Venezuela que se encuentren ubicado en los Estados Unidos de América. Asimismo las partes acuerdan que en caso de acciones legales en los tribunales de Estados Unidos de América, quedan fuera de la Jurisdicción de dichos tribunales, los activos, de la Republica Bolivariana de Venezuela ubicados dentro de territorio venezolano.

**TERCERO:** Las partes, igualmente acordaron, que bajo ninguna circunstancia los tribunales de Nueva York y/o de los Estados Unidos de América podrán emitir o conocer como materia de juicio aspectos inherentes a la validez del proceso administrativo de rescate anticipado, sólo considerarán aspectos referidos a la indemnización y/o al pago oportuno, o a lo sumo a las consecuencias legales y/o económicas del proceso del rescate anticipado. En tal sentido, el MEM, actuando en nombre y representación de la República Bolivariana de Venezuela, se somete a lo contenido en la Ley sobre la Inmunidad Soberana Extranjera de Estados Unidos de 1976, y bajo ningún respecto utilizará los tribunales venezolanos en caso de incumplimiento de pago, en cuanto a este proceso. Es por ello que, una vez culminado el juicio en contra del MEM, en alguno de los tribunales arriba señalados, la sentencia se podrá hacer cumplir en cualquier otro tribunal o Corte de jurisdicción competente; por lo tanto, el MEM ha acordado renunciar y no demandar excepciones tales como la inmunidad de la jurisdicción, foro no conveniente, contactos mínimos, señalar otro proceso legal o judicial durante el procedimiento por ante tribunales ubicados en la República Bolivariana de Venezuela. Esta renuncia también incluye inmunidad a medidas accesorias, excepciones o defensas de naturaleza similar a medidas precautelativas, precautelares, embargo preventivo, secuestros previos al fallo, ejecución de embargo, ejecución del propio fallo. Asimismo, el MEM se compromete a no iniciar ningún proceso legal en tribunales venezolanos, una vez que las empresas inicien demandas o procesos judiciales de cobro en los tribunales de la ciudad de Nueva York y/o los Estados Unidos de América.



**CUARTO:** Este addendum entrará en vigencia, si a los 24 meses siguientes a la entrega del informe del perito avaluador, el MEM no hubiera cancelado la indemnización integral que llegue a fijar el perito designado por ambas partes. El MEM acuerda en esta cláusula cancelar intereses moratorios a las empresas desde el momento en que el perito escogido por las partes entregue su informe respectivo, siempre que las empresas sean obligadas a iniciar acciones legales de cobro. En caso que el MEM u otro organismo de la Administración Pública cancele el monto indemnizatorio a las empresas, las mismas no podrán reclamar pago de intereses. En caso de acciones legales de cobro por parte de las empresas, el MEM acuerda en cancelar a las mismas la tasa del Ocho coma Cinco (8,5%) por ciento anual, a partir del momento de la entrega del informe del perito avaluador, así como también los costos de juicio(s) y los honorarios de abogado a que haya lugar.

**QUINTA:** Las partes acuerdan que los honorarios del perito avaluador que sea

designado conforme al pliego de condiciones serán cancelados por el MEM.

**SEXTA:** Domicilio de las partes: Compañía Minera del Bajo Caroní, (CAROMIN, C.A.) y V.M.C Mining Company, C.A.: Calle Cuenca, Manzana 7, Campo B de Ferrominera, Quinta Analu, Puerto Ordaz, Estado Bolívar, exclusivamente en la persona del Representante Legal de las empresas, Manuel Alfredo Fernández Gonzalo, y en caso de ausencia de éste, en la persona del apoderado judicial de las mismas, abogado Luis Andrés Guerrero Rosales. MEM: Consulado General de la República Bolivariana de Venezuela en Estados Unidos de América, Séptima Avenida con Calle 51 Este, Nueva York, Nueva York 10022. En este caso, el MEM ha designado al Cónsul General de la República Bolivariana de Venezuela en la ciudad de Nueva York, y en caso de ausencia de éste, a cualquier otro oficial de dicho consulado para darse por citado o notificado de cualquier acción o juicio intentado en contra de la República Bolivariana de Venezuela, en cualquier corte estatal o federal en la ciudad de Nueva York y/o de los Estados Unidos de América.

Notifíquese al representante legal de las empresas anteriormente mencionadas, quien deberá firmar al pie en señal de conformidad.

Agréguese a la carpeta separada del expediente administrativo identificado con el número 2084.

En Caracas, a los diecinueve (19) días del mes de diciembre del año dos mil tres (2003).

Ing. RAFAEL RAMIREZ

Acepto los términos y condiciones arriba señalados
Fecha: 22/12/2003